# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### Case No: 3:25-cv-00042-KDB-DCK

| | |
|---|---|
| WESLEY NEWMAN, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DEMAYO LAW OFFICES, LLP, CONVERGE MARKETING, LLC F/K/A CONVERGE DIRECT, LLC,  and SGMS INC. D/B/A LEGAL CONVERSION CENTER<br><br>Defendant. | **DEFENDANT DEMAYO LAW OFFICES, LLP'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND CROSS CLAIMS AGAINST CONVERGE MARKETING, LLC F/K/A CONVERGE DIRECT, LLC AND SGMS INC. D/B/A LEGAL CONVERSION CENTER** |

## ANSWER  AND CROSS CLAIMS OF DEFENDANT DEMAYO LAW OFFICES, LLP

Defendant DeMayo Law Offices, LLP ("DeMayo Law"), pursuant to Fed.R.Civ.P. Rules 8 and 12, responds to the First Amended Complaint of Plaintiff Wesley Newman ("Newman") as follows:

### FIRST DEFENSE TO ALL CLAIMS FOR RELIEF

1.      Paragraph 1 states a legal conclusion to which no response is required. To the extent a response may be required, DeMayo Law admits that paragraph 1 consists of a lengthy quotation from a Supreme Court case. Except as stated, DeMayo Law denies the allegations of this paragraph.

2.      DeMayo Law admits that the legal provisions of the TCPA speak for itself. Except as stated, DeMayo Law denies the allegations of this paragraph.

3. DeMayo Law admits that paragraph 3 is a recitation of the Plaintiff's view of the policy underlying the TCPA but denies that this has any applicability to the actions of DeMayo Law in this matter. Except as stated, DeMayo Law denies the allegations of this paragraph.

4. DeMayo Law admits that paragraph 4 is a lengthy recitation of various sections and related case law describing the TCPA but denies that this has any applicability to the actions of DeMayo Law in this matter. Except as stated, DeMayo Law denies the allegations of this paragraph.

5. DeMayo Law admits that Plaintiff purports to bring this action under the TCPA but denies it either violated the TCPA or authorized others to do so. DeMayo Law is without knowledge or information sufficient to form a belief as to whether other entities, known or unknown, violated the TCPA. Except as stated, DeMayo Law denies the allegations of this paragraph.

6. DeMayo Law adopts by reference and incorporates his response to the allegations of paragraph 5 *supra.* Except as stated, DeMayo Law denies the allegations of this paragraph.

7. DeMayo Law denies the allegations of this paragraph.

**PARTIES**

8. DeMayo Law is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph except that the Plaintiff represented to DeMayo Law that his area code was a Texas number.

9. DeMayo Law admits that it is a limited liability partnership under the laws of the State of North Carolina and does business within the Western District of North Carolina.

10. DeMayo Law admits that it entered into a contractual agreement with Lacuna Ventures, LLC, an entity that was subsequently purchased by Converge Direct, LLC, the terms of

2

which provide the nature of the services and the scope of the contractual relationship. Except as stated, DeMayo Law is without knowledge or information sufficient to form a belief as to whether Converge Direct, LLC, notified Plaintiff about the bankruptcy proceedings or the Converge Entities' headquarters and principal place of business.

11. DeMayo Law admits that it entered into a contractual agreement with the Defendant SGMS Inc. d/b/a Legal Conversion Center ("LCC"), the terms of which provide the nature of the services and the scope of the contractual relationship. Except as stated DeMayo Law is without knowledge or information sufficient to form a belief as to the headquarters and principal place of business for LCC.

**JURISDICTION AND VENUE**

12. Admitted.

13. DeMayo Law admits that this Court has personal jurisdiction over it. The remaining allegations of Paragraph 13 of the First Amended Complaint are not directed at DeMayo Law. To the extent a response may be required, DeMayo Law admits on information and belief that the Converge Entities and LCC conducted business in the State of North Carolina and within the Western District by entering into contractual agreements with DeMayo Law. Except as stated, DeMayo Law denies the allegations of this paragraph.

14. DeMayo Law admits that venue is proper within the Western District, but otherwise denies the allegations of this paragraph.

**BACKGROUND**

15. Paragraph 15 states a legal conclusion to which no response is required. To the extent a response may be required, DeMayo Law denies it or any entity authorized to act on its

3

behalf violated any prohibition on calling residential telephone numbers on the National Do Not Call Registry.

16. Paragraph 16 characterizes a provision of the Code of Federal Regulations, to which no response is required. To the extent a response may be required, DeMayo Law denies that it or any entity authorized to act on its behalf took any action inconsistent with 47 C.F.R. § 64.1200(c)(2).

17. Paragraph 17 quotes from a portion of a sentence of the Code of Federal Regulations, to which no response is required. To the extent a response may be required, DeMayo Law denies that it or any entity authorized to act on its behalf took any action inconsistent with 47 C.F.R. § 64.1200(c)(2).

18. Paragraph 18 characterizes a statute and the Code of Federal Regulations to which no response is required. To the extent a response may be required, DeMayo Law denies that it or any entity authorized to act on its behalf took any action inconsistent with 47 U.S.C. § 227(c)(5) or 47 C.F.R. § 64.1200(c)(2).

19. Paragraph 19 recites the Plaintiff's characterization of a policy of the TCPA and quotes from a portion of a sentence of the TCPA to which no response is required. To the extent a response may be required, DeMayo Law denies that it or any entity authorized to act on its behalf took any action inconsistent with the TCPA.

20. Paragraph 20 quotes from a portion of the TCPA to which no response is required. To the extent a response may be required, DeMayo Law denies that it or any entity authorized to act on its behalf took any action inconsistent with the TCPA.

4

21. Paragraph 21 characterizes a portion of the TCPA to which no response is required. To the extent a response may be required, DeMayo Law denies that it or any entity authorized to act on its behalf took any action inconsistent with 47 U.S.C. § 227(b)(1)(A).

22. Paragraph 22 is the Plaintiff's characterization of findings made by the Federal Communications Commission ("FCC") and a recitation of the Plaintiff's view of the policy that led to the enactment of the TCPA to which no response is required. To the extent a response may be required, DeMayo Law denies that it or any entity authorized to act on its behalf took any action inconsistent with 47 U.S.C. § 227(b)(3).

23. Paragraph 23 is a recitation of the Plaintiff's view of the policy that led to the enactment of the TCPA which is apparently based on a concurring and dissenting opinion by Justices Gorsuch and Thomas to which no response is required. To the extent a response may be required, DeMayo Law denies that it or any entity authorized to act on its behalf took any action inconsistent with the TCPA.

24. Paragraph 24 is a characterization of the TCPA which, without using quotations, appears to be taken in part from a decision of a District Court in Pennsylvania to which no response is required. To the extent a response may be required, DeMayo Law denies that it or any entity authorized to act on its behalf took any action inconsistent with the TCPA.

25. Paragraph 25 quotes from a portion of the TCPA and then characterizes an FCC Enforcement Advisory, to which no response is required. To the extent a response may be required, DeMayo Law denies that it or any entity authorized to act on its behalf took any action inconsistent with the TCPA.

26. Paragraph 26 is the Plaintiff's characterization of the result of a decision issued by a District Court in Pennsylvania to which no response is required. To the extent a response may

5

be required, DeMayo Law denies that it or any entity authorized to act on its behalf took any action inconsistent with the TCPA.

## FACTUAL ALLEGATIONS

27. Paragraph 27 states a legal conclusion to which no response is required. To the extent a response may be required, DeMayo Law denies that it or any entity authorized to act on its behalf took any action inconsistent with the TCPA.

28. DeMayo Law denies the allegations of this paragraph.

29. DeMayo Law denies the allegations of this paragraph.

30. DeMayo Law denies the allegations of this paragraph.

31. DeMayo Law denies the allegations of this paragraph.

32. DeMayo Law denies the allegations of this paragraph.

33. DeMayo Law is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph.

34. DeMayo Law is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph except that, on information and belief, DeMayo Law denies that any of the calls received by the Plaintiff were made on behalf of or with the authorization of DeMayo Law.

35. DeMayo Law adopts by reference and incorporates its response to paragraph 34 *supra.*

36. DeMayo Law adopts by reference and incorporates its response to paragraph 34 *supra.*

37. DeMayo Law adopts by reference and incorporates its response to paragraph 34 *supra.*

6

38. DeMayo Law adopts by reference and incorporates its response to paragraph 34 *supra.*

39. DeMayo Law adopts by reference and incorporates its response to paragraph 34 *supra.*

40. DeMayo Law adopts by reference and incorporates its response to paragraph 34 *supra.* DeMayo Law admits, on information and belief, that this paragraph alleges that Plaintiff invited further calls to a VOIP number.

41. DeMayo Law adopts by reference and incorporates its response to paragraph 34 *supra.* DeMayo Law further admits that the Plaintiff has claimed that he was informed first that the calls were placed on behalf of Quinn Emanuel, a law firm, and the Pulaski Law Firm in Texas, and further that the Plaintiff invited these calls.

42. DeMayo Law admits that, in response to a request by the Plaintiff for a further call, the Plaintiff was called, that the Plaintiff provided false information under a fictitious name and set of facts, and that the Plaintiff then received a proposed contract of representation which authorized representation by DeMayo Law. Except as stated, DeMayo Law denies the allegation of this paragraph.

43. DeMayo Law adopts by reference and incorporates its response to paragraph 34 *supra.*

44. DeMayo Law adopts by reference and incorporates its response to paragraph 34 *supra.*

45. DeMayo Law adopts by reference and incorporates its response to paragraph 34 *supra.*

46. DeMayo Law adopts by reference and incorporates its response to paragraph 34 *supra.*

47. DeMayo Law denies that the Plaintiff sought to ascertain information but, in fact, that DeMayo Law sought to understand how the Plaintiff was contacted and, in the process, specifically informed the Plaintiff that any such contacts were not authorized by DeMayo Law and were in breach of its agreements. A copy of a recorded conversation between the Plaintiff and Gowan Moise, an attorney with DeMayo Law, is attached to this Answer and Crossclaims as **Exhibit 1.**

48. DeMayo Law adopts by reference and incorporates its response to paragraph 34 *supra.*

49. DeMayo Law adopts by reference and incorporates its response to paragraph 34 *supra.*

50. DeMayo Law adopts by reference and incorporates its response to paragraph 33 *supra.*

51. DeMayo Law adopts by reference and incorporates its response to paragraph 47 *supra.* Except as stated, DeMayo Law is without knowledge or information sufficient to form a belief as to the truth or falsity of this paragraph.

52. DeMayo Law adopts by reference and incorporates its response to paragraph 34 *supra.*

53. DeMayo Law adopts by reference and incorporates its response to paragraph 34 *supra.*

54. DeMayo Law adopts by reference and incorporates its response to paragraph 34 *supra.*

55.     DeMayo Law adopts by reference and incorporates its response to paragraph 11 *supra*. Except as stated, DeMayo Law denies the allegations of this paragraph.

56.     DeMayo Law denies the allegations of this paragraph.

57.     Paragraph 57 is the Plaintiff's recitation of a portion of rules relating to the TCPA, but denies that the TCPA imposes (or that the FCC may impose) a standard of strict liability or otherwise impose liability when an entity acts without authorization. DeMayo Law denies that it is vicariously liable under common law principles of agency. Except as stated, DeMayo Law denies the allegations of this paragraph.

58.     DeMayo Law adopts by reference and incorporates its response to paragraph 57 *supra.* DeMayo Law denies that it is vicariously liable under common law principles of agency.

59.     DeMayo Law adopts by reference and incorporates its response to paragraph 57 *supra.* DeMayo Law denies that it is vicariously liable under common law principles of agency.

60.     DeMayo Law adopts by reference and incorporates its response to paragraph 57 *supra.* DeMayo Law denies that it is vicariously liable under common law principles of agency.

61.     DeMayo Law denies the allegations of this paragraph.

62.     DeMayo Law adopts by reference and incorporates its response to paragraph 10 *supra*. Except as stated, DeMayo Law denies the allegations of this paragraph.

63.     Upon information and belief, DeMayo Law admits the allegations of this paragraph.

64.     DeMayo Law admits the allegations of this paragraph.

65.     DeMayo Law admits the allegations of this paragraph.

66.     DeMayo Law is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph.

9

67. DeMayo Law admits that Old Converge promised to indemnify DeMayo Law. Except as stated, DeMayo Law denies the allegations of this paragraph.

68. DeMayo Law denies the allegations of this paragraph.

69. DeMayo Law denies the allegations of this paragraph .

70. DeMayo Law denies the allegations of this paragraph .

71. DeMayo Law denies the allegations of this paragraph .

72. DeMayo Law denies the allegations of this paragraph .

73. DeMayo Law denies the allegations of this paragraph.

74. DeMayo Law denies the allegations of this paragraph.

75. DeMayo Law denies the allegations of this paragraph.

76. DeMayo Law denies the allegations of this paragraph.

77. DeMayo Law denies the allegations of this paragraph.

78. DeMayo Law denies the allegations of this paragraph.

79. DeMayo Law denies the allegations of this paragraph.

80. DeMayo Law adopts by reference and incorporates its response to paragraph 57 *supra.* DeMayo Law denies the allegations of this paragraph.

81. Paragraph 81 states a legal conclusion to which no response is required. To the extent a response may be required, DeMayo Law admits the allegations of this paragraph.

82. DeMayo Law admits the allegations of this paragraph.

83. DeMayo Law is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph.

84. Paragraph 84 states a legal conclusion to which no response is required. To the extent a response may be required, DeMayo Law is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph.

85. Paragraph 85 states a legal conclusion to which no response is required. To the extent a response may be required, DeMayo Law is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph.

86. Paragraph 86 states a legal conclusion to which no response is required. To the extent a response may be required, DeMayo Law is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph.

87. DeMayo Law is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph.

88. Paragraph 88 states a legal conclusion to which no response is required. To the extent a response may be required, DeMayo Law is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph.

89. DeMayo Law admits that after initial discussions Plaintiff did not seem interested in a potential settlement. Except as stated, DeMayo Law denies the allegations of this paragraph.

90. Paragraph 90 states a legal conclusion to which no response is required. To the extent a response may be required, DeMayo Law is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph.

91. Paragraph 91 states a legal conclusion to which no response is required. To the extent a response may be required, DeMayo Law is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph.

92. DeMayo Law denies the allegations of this paragraph.

93. DeMayo Law denies the allegations of this paragraph.

94. DeMayo Law denies the allegations of this paragraph.

95. DeMayo Law denies the allegations of this paragraph.

96. DeMayo Law denies the allegations of this paragraph.

97. DeMayo Law denies the allegations of this paragraph.

98. DeMayo Law denies the allegations of this paragraph.

99. DeMayo Law denies the allegations of this paragraph.

100. DeMayo Law denies the allegations of this paragraph.

## CLASS ACTION ALLEGATIONS

101. DeMayo Law adopts by reference and incorporates its responses to Paragraphs 1 through 100 of the First Amended Complaint.

102. DeMayo Law denies the allegations of this paragraph.

103. DeMayo Law denies the allegations of this paragraph.

104. DeMayo Law denies the allegations of this paragraph.

105. DeMayo Law denies the allegations of this paragraph.

106. DeMayo Law denies the allegations of this paragraph.

107. DeMayo Law admits that this First Amended Complaint purportedly seeks injunctive relief and damages but denies that the Plaintiff is entitled to injunctive relief or damages.

108. DeMayo Law denies the allegations of this paragraph.

109. DeMayo Law denies the allegations of this paragraph.

110. DeMayo Law denies the allegations of this paragraph.

111. DeMayo Law denies the allegations of this paragraph.

112. DeMayo Law denies the allegations of this paragraph.

113.   DeMayo Law denies the allegations of this paragraph and each subpart thereof.

114.   DeMayo Law denies the allegations of this paragraph.

115.   DeMayo Law denies the allegations of this paragraph.

116.   DeMayo Law denies the allegations of this paragraph.

117.   DeMayo Law denies the allegations of this paragraph.

**FIRST CAUSE OF ACTION**
**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(b)) on behalf of the Robocall Class**

118.   DeMayo Law adopts by reference and incorporates its responses to Paragraphs 1 through 117 of the First Amended Complaint.

119.   DeMayo Law denies the allegations of this paragraph.

120.   DeMayo Law denies the allegations of this paragraph.

121.   DeMayo Law denies the allegations of this paragraph.

122.   DeMayo Law denies the allegations of this paragraph.

**SECOND CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

123.   DeMayo Law adopts by reference and incorporates its responses to Paragraphs 1 through 122 of the First Amended Complaint.

124.   DeMayo Law denies the allegations of this paragraph.

125.   DeMayo Law denies the allegations of this paragraph.

126.   DeMayo Law denies the allegations of this paragraph.

127.   DeMayo Law denies the allegations of this paragraph.

13

**THIRD CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(d) on behalf of Plaintiff and the Internal Do**
**Not Call Registry Class**

128. DeMayo Law adopts by reference and incorporates its responses to Paragraphs 1 through 127 of the First Amended Complaint.

129. DeMayo Law denies the allegations of this paragraph.

130. DeMayo Law denies the allegations of this paragraph.

131. DeMayo Law denies the allegations of this paragraph.

**SECOND DEFENSE TO ALL CLAIMS FOR RELIEF**
**(Lack of Standing)**

Plaintiff and the members of the putative classes have not suffered injury in fact as a result of any alleged conduct by DeMayo Law, and therefore Plaintiff and the members of the class lack standing to assert a claim under Article III. *See TransUnion LLC v. Ramirez*, 2021 U.S. LEXIS 3401, at *25 (June. 25, 2021) ("Every class member must have Article III standing in order to recover individual damages").

**THIRD DEFENSE TO ALL CLAIMS FOR RELIEF**
**(Statute of Limitations)**

Upon information and belief, and subject to further investigation, DeMayo Law alleges that the claims of Plaintiff and/or members of the alleged classes he purports to represent are barred by the applicable statute of limitations to the extent their claims accrued more than four years prior to the filing of this action. 28 U.S.C. § 1658.

**FOURTH CLAIM FOR RELIEF**
**(Equitable Indemnity)**

To the extent that Plaintiff or members of the putative class have suffered any damages as

a result of any alleged act or omission of DeMayo Law, which DeMayo Law denies, DeMayo Law is entitled to equitable indemnity according to comparative fault from one or more other persons and/or entities causing or contributing to such damages, if any. On information and belief, any phone calls that form the basis for Plaintiffs' and the class members' claims against Defendants were not made by DeMayo Law, and if they were made, one or more other persons initiated them.

### FIFTH DEFENSE TO ALL CLAIMS FOR RELIEF
#### (Non-Actionable Error)

To the extent that any violation of law occurred, which DeMayo Law expressly denies, said violation resulted from an error notwithstanding DeMayo Law's routine business practices intended to avoid such violation. The phone calls that form the purported basis for Plaintiff's claims and the class members' claims against DeMayo Law were not made by DeMayo Law, and if they were made, they were initiated by one or more other persons whom DeMayo Law reasonably understands and expects will not violate the statutes and regulations that form the basis of the Complaint.

### SIXTH DEFENSE TO ALL CLAIMS FOR RELIEF
#### (Apportionment)

Without admitting that any damages exist, if damages were suffered by Plaintiff or members of the putative classes as alleged in the Complaint, those damages were proximately caused by and contributed by persons other than DeMayo Law, since DeMayo Law does not make phone calls as alleged in the Complaint. The liability, if any exists, of all defendants and/or any responsible parties, named or unnamed, should be apportioned according to their relative degrees of fault, and the liability of DeMayo Law should be reduced accordingly.

### SEVENTH DEFENSE TO ALL CLAIMS FOR RELIEF
#### (Established Business Relationship)

Without admitting that DeMayo Law is vicariously liable for any of the alleged phone calls,

which DeMayo Law expressly denies, DeMayo Law asserts that there is no violation of law for any calls made to persons who had an established business relationship with DeMayo Law. *See* 47 C.F.R. §§ 64.1200(f)(5) and 64.1200(f)(14)(ii).

## EIGHTH DEFENSE TO ALL CLAIMS FOR RELIEF
### (Prior Express Invitation or Permission)

Without admitting that DeMayo Law is vicariously liable for any of the alleged phone calls, which DeMayo Law expressly denies, DeMayo Law asserts that there is no violation of law for any calls received by persons who provided their prior express invitation or permission for the calls. *See* 47 C.F.R. §§ 64.1200(c)(2)(ii) and 64.1200(f)(14)(i).

## NINTH DEFENSE TO ALL CLAIMS FOR RELIEF
### (Due Process)

Without admitting that DeMayo Law is vicariously liable for any of the alleged call attempts to Plaintiff or class members, which DeMayo Law expressly denies, DeMayo Law asserts that the imposition of an award of statutory damages against DeMayo Law for each of the alleged violations of the TCPA would violate the Due Process Clause of the Constitution. *See, e.g.*, *Golan v. FreeEats.Com, Inc.,* 930 F.3d 950 (8th Cir. 2019).

## TENTH DEFENSE TO ALL CLAIMS FOR RELIEF
### (Adequate Procedures Under 47 CFR § 64.1200(c)(2)(i)(A)-(E))

Without admitting that DeMayo Law is vicariously liable for any of the alleged phone calls, which DeMayo Law expressly denies, DeMayo Law cannot be held liable for any telephone solicitations that violate 47 CFR § 64.1200(c)(2) because any violation resulted from error in the face of the maintenance of adequate policies and procedures as part of routine business practice that meet the standards in 47 CFR § 64.1200(c)(2)(i)(A)-(E).

16

## ELEVENTH DEFENSE TO ALL CLAIMS FOR RELIEF
### (Adequate Procedures Under 47 CFR § 64.1200(d)(1)-(6))

Without admitting that DeMayo Law is vicariously liable for any of the alleged phone calls, which DeMayo Law expressly denies, DeMayo Law cannot be held liable for any telephone calls that violate 47 CFR § 64.1200(d) because adequate policies and procedures were maintained as part of its routine business practice that meet the standards in 47 CFR § 64.1200(d)(1)-(6).

## CROSS CLAIMS

Defendant and Crossclaim Plaintiff DeMayo Law Offices, LLP ("DeMayo Law"), through counsel, asserts these Crossclaims against Defendant and Crossclaim Defendant Converge Marketing, LLC ("New Converge") alleging as follows:

### Summary of Cross Claims

DeMayo Law brings these cross claims against New Converge for Declaratory Judgment, Breach of Contract, and Waiver. These claims all arise out of New Converge's conduct in agreeing to indemnify DeMayo Law in accord with the terms of a prior indemnity agreement between Old Converge and DeMayo Law.

In 2022, Lacuna (which was later purchased by Old Converge ) and DeMayo Law entered into a business relationship, part of which dealt with a media campaign to be conducted by Old Converge concerning claims arising out of the Camp Lejeune toxic tort fund. Old Converge agreed to conduct activities including a media campaign to notify the public (and in particular those who served at Camp Lejeune) of the existence of the fund and the claims process, provide a contact number for interested claimants, and then transfer any calls received to LCC. In this campaign, DeMayo Law did not and would not place any calls, and no calls would be placed by Old Converge or LCC unless a person telephoned the contact number and requested information.

In its contract with DeMayo Law ("MSA"), Old Converge represented and warranted that

it would "comply with all applicable foreign, federal, state and local laws, rules and regulations" in the performance of its obligations. Old Converge further represented and warranted that its personnel, including any independent contractors "have the proper skill, training and background to perform in a competent and professional manner" all its obligations. Finally, Old Converge agreed to indemnify and hold harmless DeMayo Law against all losses (including reasonable attorneys' fees and expenses) attributable to any third-party claim (such as this claim) "related to or arising out of" any breach of a representation or warranty, or its negligence or willful misconduct (such as Newman alleges here). ("MSA Indemnity Agreement") During the course of their commercial relationship, DeMayo Law paid Old Converge more than $4 Million in fees and related charges for its services.

In late 2022, the Plaintiff, Wesley Newman ("Newman"), notified DeMayo Law that he had allegedly received calls in violation of the TCPA. DeMayo Law informed Newman that if such calls were made, they were made without its authorization. DeMayo Law further notified Old Converge and, in 2023, Old Converge retained counsel and sought to negotiate a resolution of Newman's claims. Old Converge, through its counsel, made a settlement offer to Newman in May 2023. Newman, however, did not respond.

In December 2023, Old Converge filed for Bankruptcy. A few months later, New Converge purchased its assets. In June 2024, Newman responded to the 2023 settlement offer made by Old Converge's counsel. Old Converge's counsel notified New Converge of the response. Once notified, New Converge retained the same counsel and instructed counsel to, again, negotiate with Newman and resolve the claim on DeMayo's behalf. New Converge, worked with DeMayo Law and secured confidential information from DeMayo Law as it negotiated Newman's claims.

DeMayo Law permitted New Converge to take these actions on the understanding that New Converge was proceeding under the same indemnification obligations as had existed in the Old Converge MSA. In so doing, DeMayo Law did not retain its own counsel nor seek to control the resolution of the claims with Newman, relying on New Converge and its counsel to do so. New Converge, for its part, had a significant incentive to take on the obligation, as it sought to restore a multimillion-dollar commercial relationship with DeMayo Law.

New Converge, however, failed to resolve Newman's claims for DeMayo Law and, in early 2025, Newman sued DeMayo Law. New Converge then retained the law firm of Kelley Drye & Warren to represent DeMayo Law and enter an appearance on its behalf. As part of its representation, Kelley Drye tendered a proposed written indemnification agreement on behalf of New Converge. In that proposed agreement, it was represented that New Converge had "stepped into" the position of Lacuna/Old Converge under the MSA (and thus under the MSA Indemnity Agreement), and sought to reserve all rights under the Old Converge MSA Indemnity Agreement.

Then, after appearing on behalf of DeMayo Law and tendering a written indemnification agreement, and without notice or warning, on April 29, 2025, New Converge suddenly announced that it had no contractual obligation to DeMayo Law whatsoever and that it would cease to provide any further representation to DeMayo Law.

DeMayo Law now seeks a declaration that there is an express or implied-in-fact contract between New Converge and DeMayo Law with its terms defined by the terms of the MSA Indemnity Agreement, that New Converge is in breach of those obligations, and that New Converge has waived or is estopped from any claim that it is not obligated under the MSA Indemnity Agreement.

To be clear, DeMayo Law does not contend that New Converge is obligated because Lacuna/Old Converge entered into a contract with DeMayo Law, or that New Converge is obligated in any way on Lacuna/Old Converge's liabilities or obligations. In June 2024, when Newman renewed his claims, New Converge was free to inform DeMayo Law that it owed no indemnity obligations to DeMayo Law, that it was a separate entity from the now-bankrupt Lacuna/Old Converge, that it was not bound by the MSA Indemnity Agreement, and that DeMayo Law would need to deal with the Plaintiff directly and on its own. New Converge did not do that. To the contrary, it did just the opposite, establishing a new contractual relationship with DeMayo Law and inducing DeMayo Law to act on the understanding that the terms and conditions of the MSA Indemnity Agreement applied. New Converge entered into this new contract and had a significant business purpose to do so in order to re-establish a multimillion-dollar commercial relationship, For nearly a year, New Converge took actions and made representations and statements indicating an agreement to indemnify DeMayo Law with the intent that DeMayo Law rely on them, subject to the terms and conditions of the MSA indemnity clause. In so doing, New Converge and DeMayo entered into an express or implied-in-fact contract under North Carolina law which both parties understood incorporated the terms and conditions of the MSA Indemnity Agreement. New Converge is now liable under those terms and conditions.

### Numbered Allegations

1. DeMayo Law incorporates by reference its above Answer and Defenses to Plaintiff's First Amended Complaint as if fully restated herein.

### PARTIES, JURISDICTION, AND VENUE

2. DeMayo Law is a limited liability partnership organized under the laws of North Carolina with a principal place of business in Charlotte, North Carolina.

3. Upon information and belief, Crossclaim Defendant Converge Marketing, LLC ("New Converge") is a New York limited liability company.

4. DeMayo Law's Crossclaims arise out of the same transaction or occurrence that is the subject of Plaintiff's First Amended Complaint. Accordingly, this Court has subject-matter jurisdiction over the Crossclaims under Rule 13(g) of the Federal Rules of Civil Procedure.

5. Venue is proper in this forum.

## FACTUAL ALLEGATIONS

6. On February 1, 2022, DeMayo Law entered into a Master Services Agreement ("MSA") with Lacuna Ventures, LLC ("Lacuna"). Then, in a related Statement of Work ("SOW") with DeMayo Law, Lacuna agreed to provide services to DeMayo Law for marketing and media services. The SOW provided that it was "made part of the Master Services Agreement." A copy of the Master Services Agreement is attached as **Exhibit 2**. ("MSA"). A copy of the SOW is attached as **Exhibit 3**.

7. Lacuna was subsequently purchased by Converge Direct, LLC ("Old Converge"), a New York Corporation.

8. On March 22, 2022, Troika Media Group, Inc. acquired Old Converge and Lacuna.

9. In connection with the SOW, Lacuna through Old Converge agreed to provide a media and marketing campaign related to the Camp Lejeune toxic tort fund, subject to the terms and conditions of the MSA.

10. The MSA warranted and represented that Lacuna/Old Converge would "comply with all applicable foreign, federal, state and local laws, rules and regulations in connection with the performance of its rights, duties and obligations under this Agreement." **Exhibit 2**, MSA ¶ 4(b).

11.     The MSA further provided with respect to Lacuna/Old Converge that "all Company personnel, including any independent contractors . . . have the proper skill, training and background to perform in a competent and professional manner all of Company's obligations hereunder." **Exhibit 2**, MSA ¶ 4(f).

12.     The MSA contained an indemnification provision ("MSA Indemnity Agreement"). In it, Lacuna/Converge agreed to "indemnify, defend and hold harmless the other Party [DeMayo Law] . . . against and from all losses, damages, liabilities, costs and expenses (including, without limitation, reasonable attorneys' fees and costs and expenses), attributable to any third-party claim, proceeding, action, lawsuit or investigation . . . related to or arising out of (i) any breach by the Indemnifying Party of any representation, warranty or covenant . . . contained in this Agreement" and "(ii) the negligence or willful misconduct by or on behalf of the Indemnifying Party in connection with the performance or lack of performance of the . . . obligations under this Agreement." **Exhibit 2**, MSA ¶ 10.

13.     Throughout 2022, Lacuna/Old Converge conducted a media and marketing campaign relating to the Camp Lejeune toxic tort settlement fund.

14.     In that campaign, Lacuna/Old Converge, through various forms of media, alerted the public that Congress had established a compensation fund for persons who served at or lived on Camp Lejeune arising from any injuries caused as a result of toxic and contaminated drinking water.

15.     The campaign was designed to provide a number to which an interested person could call and, once an incoming call was received, the caller would be directed to LCC, who

would then determine whether the caller was qualified to make a claim and, if so, whether the caller would agree to be represented by DeMayo Law.1

16.     DeMayo Law paid millions of dollars to Lacuna/Old Converge for the cases generated by this campaign.  DeMayo Law understood and Lacuna/Converge represented, that the campaign would comply with all federal laws, including the TCPA.  Indeed, DeMayo Law understood and intended that no calls would be made at all in the campaign; rather, individuals would call into a number to express interest and then would be transferred to LCC for qualification and processing.

17.     DeMayo Law made no calls to anyone in connection with the campaign.

18.     In November 2022, DeMayo Law received a call from Newman, then operating under an alias, complaining about telephone calls that he allegedly received in violation of the TCPA.

19.     During the course of investigating Newman's claim, DeMayo Law informed Newman that if outgoing calls were made to him without a request by him, then those calls were made without DeMayo Law's permission or authorization.

20.     After speaking with Newman, DeMayo Law notified Lacuna/Old Converge of Newman's assertions and claims that the TCPA had been violated.

21.     In May 2023, Newman filed a complaint with the Better Business Bureau against DeMayo Law concerning the subject-matter of this litigation and alleging violations of the TCPA. Lacuna/Old Converge and LCC then retained John Rosenthal, an attorney, to respond to Newman on behalf of DeMayo Law.

---

[1] DeMayo Law was not the exclusive law firm for which LCC qualified callers.  LCC qualified callers for a number of other law firms, including DeMayo Law.

22.     During the following weeks, there was discussion between Lacuna/Old Converge and LCC about this matter, culminating with Lacuna/Old Converge's authorization to Mr. Rosenthal to begin negotiations to resolve the matter on behalf of DeMayo Law.

23.     A settlement offer was made on May 30, 2023, which was authorized by Lacuna/Old Converge. Rosenthal notified DeMayo Law of the settlement offer, which sought to resolve all claims by Plaintiff against DeMayo Law.

24.     Lacuna/Old Converge's actions were consistent with its obligations under the MSA Indemnity Agreement, which required it to indemnify DeMayo Law against third-party claims, such as Newman's claim, arising out of or related to a claimed violation of the TCPA, a federal law.

25.     Because DeMayo Law did not make any of the calls about which Newman complained, under the MSA Indemnity Agreement, if Lacuna/Old Converge made such calls, or contracted with a third party which made such calls, then Lacuna/Old Converge was obligated to DeMayo Law under the MSA Indemnity Agreement.

26.     Between May 2023 and June 19, 2024, Newman did not respond to the offer of settlement made by the attorney retained by Lacuna/Old Converge to resolve all claims against DeMayo Law.

27.     On December 11, 2023, Troika Media Group, Inc., Lacuna and Old Converge filed a Chapter 11 Bankruptcy Proceeding.

28.     On February 8, 2024, the Bankruptcy Court issued an Order approving the sale of the assets of Troika, Lacuna, and Old Converge.  The Purchaser of the assets was Converge Marketing, LLC ("New Converge").  Along with purchasing the assets of Lacuna/Old Converge,

24

a number of employees from Lacuna/Old Converge became employed by New Converge. New Converge further began using the "converge.com" email domain.

29. On June 19, 2024, Newman responded to the settlement offer made by the attorney retained by Lacuna/Old Converge, Mr. Rosenthal.

30. That same day, Mr. Rosenthal informed Rick Sanchez (a former employee of Lacuna/Old Converge and DeMayo Law's principal point of contact with Lacuna/Old Converge) now employed at New Converge of Mr. Newman's response.

31. Mr. Rosenthal, the attorney for Lacuna/Old Converge, did not immediately notify DeMayo Law of Newman's response because he had been retained by Lacuna/Old Converge, not DeMayo Law.

32. On July 11, 2024, Mr. Rosenthal responded to Newman and informed him that "[w]e are in the process of being retained to address your email and dispute."

33. The next day, July 12, 2024, and for the first time since Newman's June 19 email, Mr. Rosenthal informed DeMayo Law that the Plaintiff had responded. In that email, Mr. Rosenthal wrote that he was "in contact with Converge and Legal Conversion [LCC] to try to resolve this matter, once we are retained."

34. The reference to Converge in this email can only refer to "New Converge," as Lacuna/Old Converge was in bankruptcy and had sold its assets to New Converge.

35. On July 31, 2024, Mr. Rosenthal, now in his capacity as attorney for New Converge, informed DeMayo Law that "Converge has retained our firm to try to resolve the matter."

36. The reference to Converge can only refer to and was New Converge.

37. In the same July 31, 2024 email, Mr. Rosenthal asked Mr. DeMayo to contact him to discuss the matter.

38. DeMayo agreed to discuss the matter with New Converge's attorney, accepting the representation that New Converge had retained Mr. Rosenthal to resolve the matter. Because New Converge had retained counsel to resolve this matter, DeMayo Law, acting on this representation, justifiably believed that New Converge would take the steps necessary to protect DeMayo Law and resolve this matter under the indemnity provisions of the MSA.

39. In reliance on this representation, and believing that New Converge would represent DeMayo Law and its interest in the Plaintiff's claims, DeMayo Law agreed to speak with New Converge's attorney, Mr. Rosenthal, and provide confidential information and rely upon New Converge to protect DeMayo Law's interests.

40. In fact (and as later represented by litigation counsel for New Converge), New Converge had "stepped into Lacuna's rights and obligations" under the MSA.

41. On August 5, 2024, in an email to Derek McKinney and Rick Sanchez at New Converge, Mr. Rosenthal reported that DeMayo Law was "on board with having Converge sign the settlement agreement, with DeMayo and Legal Conversion as released parties." He further reported that DeMayo law was "willing to chip in $2k-$3k." Mr. Rosenthal then sought New Converge's permission to make a settlement offer in this range.

42. On August 26, 2024, New Converge's counsel, communicated a settlement offer to Newman, representing that the settlement offer was made on DeMayo Law's behalf.

43. During this time New Converge did not inform DeMayo Law that it had no obligations or duties in this matter because it was a different entity than Lacuna/Old Converge and was not responsible for its liabilities.

26

44.     To the contrary, New Converge retained counsel to represent DeMayo Law and resolve this matter for DeMayo Law.  In reliance on these actions, DeMayo Law provided confidential information to New Converge's counsel, including its views on liability and settlement, and permitted New Converge's counsel to represent it.  DeMayo Law further did not retain its own counsel, nor did it seek to negotiate directly with Newman, in reliance on New Converge's actions in retaining counsel and conducting negotiations consistent with the obligations of the MSA Indemnity Agreement.

45.     DeMayo Law altered its position to its detriment in the good-faith belief that New Converge's actions meant that it had agreed to indemnify DeMayo Law against the Plaintiff's claims in a manner consistent with the MSA Indemnity Agreement with Lacuna/Old Converge.

46.     New Converge had valid business reasons to agree to indemnify DeMayo Law under the terms of the MSA Indemnity Agreement and otherwise agree to act in accordance with those terms. DeMayo Law paid Lacuna/Old Converge roughly $4.78 Million for its services and was a client that New Converge wanted to acquire and maintain.  New Converge further had an incentive to resolve this matter with the Plaintiff, but in the name of DeMayo Law and LCC, so that it would not be associated with the claims that the Plaintiff made as it sought to continue the business of Lacuna/Old Converge. The indemnification agreement also allowed New Converge to obtain information directly from DeMayo Law.

47.     At no time during this period did New Converge inform DeMayo Law that it would not represent DeMayo Law or that it would not indemnify DeMayo Law in connection with Newman's claims and under the terms and conditions of the MSA Indemnity Agreement.  To the contrary, New Converge took actions consistent with the same actions that Lacuna/Old Converge

27

had taken under the MSA Indemnity Agreement, and it did so with the intent that DeMayo Law rely on those actions, change its position, and share confidential information with its attorney.

48.     New Converge and its counsel were unable to resolve the claims with the Plaintiff on behalf of DeMayo Law.

49.     On January 21, 2025, Newman filed this lawsuit against DeMayo Law and LCC.

50.     Because New Converge had never revealed that it was the party who retained Mr. Rosenthal, and because Mr. Rosenthal conducted negotiations in the name of DeMayo Law and LCC, the Plaintiff was unaware of the roles of Lacuna/Old Converge or New Converge (or any distinction between the two) and did not name either entity in the Complaint.

51.     On January 22, 2025, following receipt of the lawsuit, DeMayo Law contacted Mr. Rosenthal.  In its correspondence, DeMayo Law noted that Mr. Rosenthal had represented that DeMayo Law would be indemnified by New Converge.  DeMayo Law asked that it be put in contact with the attorney who would handle the lawsuit.

52.     In response, Mr. Rosenthal replied that the notice of the litigation and "the request for indemnity are best directed to Converge, as my firm has not been retained to defend the matter."

53.     On January 24, DeMayo Law replied and said "I was led to believe that you have been retained by Converge to handle this matter?  When can we chat?"  Mr. Rosenthal then informed DeMayo law that he was no longer a member of his prior firm "for purposes of litigation" and would be doing a conflicts check. Mr. Rosenthal copied Rick Sanchez, the former Lacuna/Old Converge executive who now worked for New Converge and served as a point of contact for DeMayo Law, indicating that "Converge and DeMayo would have to agree to retain my new firm."

54.     New Converge did not raise any issues concerning its indemnity obligations and related actions to defend DeMayo Law, nor suggest that it had not agreed to do so.

55. On February 6, 2025, in an email that included Marie Scheibert of DatapointsLaw ("Scheibert") (one of New Converge's attorneys), DeMayo Law informed counsel for LCC that Scheibert was the internal counsel for Converge and would be coordinating the introduction to lawyers who would be "handling" the case from "Kelly [sic] Drye."

56. Mr. Rosenthal and his new Firm were not retained by New Converge. Instead, New Converge retained Kelley Drye & Warran, LLP ("Kelley Drye") in this matter.

57. Under an agreement between New Converge, LCC, and DeMayo Law, and initiated by New Converge through Kelley Drye, New Converge's counsel Kelley Drye drafted and signed the filings for a Partial Motion to Dismiss on March 20, 2025.

58. New Converge's attorneys, Kelly Drye, subsequently moved to be admitted pro hac vice as counsel for DeMayo Law and LCC. Counsel for DeMayo Law agreed to act as Local Counsel for the purposes of the case and these motions.

59. Later, on April 23, 2025, New Converge's counsel, Kelley Drye, filed a Reply Memorandum in support of the Partial Motion to Dismiss, acting as lead counsel for both DeMayo Law and LCC.

60. During Kelly Drye's representation, counsel for DeMayo Law provided confidential information, relied upon New Converge's counsel to protect DeMayo Law's interest, and otherwise took actions that changed DeMayo law's position in reliance on New Converge's action in representing DeMayo Law and meeting and indemnifying it.

61. Significantly, during this time, Kelley Drye indicated that New Converge would reserve all its rights with respect to any indemnification obligations. New Converge never contended that there were no obligations or no contract whatsoever between New Converge and DeMayo Law. New Converge relied upon the rights that it negotiated post-sale with DeMayo

Law, though its counsel Mr. Rosenthal and its executive Mr. Sanchez, to defend and indemnify DeMayo Law, to try to settle the matter with Plaintiff, before he could make a claim against New Converge, to attempt to get this Court to dismiss the Complaint using information provided by DeMayo Law at New Converge's request.

62. During this time, neither New Converge's attorneys, nor New Converge, asserted that New Converge did not have any contractual obligation to indemnify DeMayo Law.

63. In furtherance of its role as counsel for DeMayo Law and LCC, and under a joint defense agreement, Kelly Drye solicited confidential and otherwise privileged information from DeMayo Law to assist it in drafting pleadings and negotiating with Plaintiff's counsel.

64. On April 1, 2025, New Converge's counsel, Kelley Drye, transmitted a proposed indemnification agreement for review by DeMayo Law. A copy of the proposed indemnification agreement is attached as **Exhibit 4**.

65. Kelley Drye did so with New Converge's knowledge, in furtherance of its obligations as New Converge's attorney and agent, and in so doing was acting on behalf of New Converge and within the course and scope of its agency.

66. In the proposed indemnification agreement, New Converge is a party, and recited that it entered into the MSA with DeMayo Law.

67. It further recited that while Lacuna was the signatory on the MSA and SOW, "Lacuna is now doing business as Converge and Converge has stepped into Lacuna's rights and obligations." **Exhibit 4** at p. 1 n. 1.

68. Kelley Drye, on behalf of New Converge, thus confirmed to DeMayo Law that New Converge had assumed an indemnity obligation to DeMayo Law for Newman's claims, and that

30

this indemnity obligation was defined by the terms and conditions of the MSA Indemnity Agreement.

69.     The proposed indemnification agreement by Kelley Drye further recites that New Converge has retained Kelley Drye to jointly represent it, DeMayo Law, and LCC.

70.     The indemnification agreement proposed that New Converge would completely indemnify DeMayo Law from attorneys' fees through the Pleading Stage, and then discuss a "reasonable allocation of defense costs for the remainer of the Action" and "a reasonable allocation of payment obligations for any settlement or judgment."

71.     New Converge further provided that it reserved "all rights and remedies available to it under the DeMayo-Converge MSA and any other applicable agreements, at law, and in equity."

72.     New Converge thus specifically confirmed that its only rights and remedies would exist under the Lacuna/Old Converge MSA and specifically the MSA Indemnity Agreement.

73.     Before DeMayo Law could enter into the proposed indemnification agreement, New Converge's counsel sought a telephone call with counsel for DeMayo Law on April 29, 2025.

74.     On April 29, 2025, New Converge's attorneys informed counsel for DeMayo Law that it was now withdrawing the proposed indemnification agreement and would be transmitting a new agreement. Counsel further indicated that Scheibert, on behalf of New Converge, would be sending a letter via email and that the letter would inform DeMayo Law that all indemnity obligations for this matter were barred by the bankruptcy court sale of Lacuna/Old Converge's assets to New Converge and that New Converge had no obligations whatsoever under this matter.

75.     Subsequently, on May 13, 2025, Scheibert transmitted a letter to DeMayo Law in which New Converge contended that it had no obligations related to the litigation as a result of the

Lacuna/Old Converge bankruptcy and asset sale. The letter further contended that under the MSA with Lacuna/Old Converge, Lacuna/Old Converge was entitled to unilaterally determine a credit to be given if it produced a fraudulent lead (a claim that is not contained in this lawsuit). The letter thus asserted that New Converge had "more than satisfied" that obligation. It finally claimed that to the extent that DeMayo Law claimed indemnification against New Converge, it was required to do so in Bankruptcy Court.

76. On June 13, 2025, DeMayo law responded and pointed out the numerous actions taken by New Converge to indemnify DeMayo law and resolve this matter, and DeMayo Law's reliance on these actions, DeMayo Law's change in position based on these actions, New Converge's delay in asserting that it was not taking on the obligations under the MSA, and the representations and actions taken by New Converge in agreeing to the indemnification obligations as defined by the MSA Indemnity Agreement.[2]

77. DeMayo Law relied to its detriment on New Converge's representations and omissions beginning in 2024 and through April 29, 2025, up to and including: (a) providing otherwise privileged and confidential information to New Converge and its counsel; (b) not securing its own attorney or otherwise directly dealing with Newman in an attempt to resolve his claims; and (c) permitting New Converge's counsel to enter an appearance on DeMayo Law's behalf, file a Motion to Dismiss, and assume an active role in the defense of this matter. Had New Converge disclosed its current position at any time prior to April 29, 2025, DeMayo Law would have taken steps to protect its rights, including directly negotiating and attempting to resolve

---

[2] New Converge and DeMayo Law subsequently entered into a "standstill" agreement. Each reserved its rights, legal positions, and related arguments under the agreement. The agreement was terminated by written notice in February 2026.

Newman's claims before the onset of litigation and protecting its interests more fully in this litigation.

78. On March 5, 2026, and after receiving discovery from DeMayo Law and LCC, Newman filed his First Amended Complaint, which named New Converge as a defendant.

79. In his First Amended Complaint, Newman alleges that he received twelve calls from LCC and Lacuna/Old Converge on behalf of DeMayo Law that violated the Telephone Consumer Protection Act ("TCPA"). See First Amended Complaint ("FAC"), ¶ 34. "Some of these calls were" allegedly "placed with prerecorded messages," including the first call he allegedly received on November 8, 2022. Id., ¶ 35. That call allegedly came from a "robot" who "claimed to be with 'Camp Lejeune'" and "asked various questions, including if Plaintiff or a family member was located at Camp Lejeune." Id.

80. Newman allegedly "told the robot to stop calling him and to place him on the do not call list." Id., ¶ 37. Despite his requests, Newman allegedly received subsequent similar calls from LCC "through May of 2023." See id., ¶¶ 37-51.

81. Based on these alleged calls, Newman has asserted three claims against DeMayo Law, New Converge, and LCC.

82. Newman seeks statutory damages and injunctive relief in connection with each claim.

83. Newman's claims, both in 2022 and in this lawsuit, constitute the claims of a third-party which alleges that Lacuna/Old Converge violated the TCPA, a federal law. Such a violation would represent a breach of the warranty provision of the MSA that is incorporated into the MSA Indemnity Agreement.

33

84.     DeMayo Law's expenses, including reasonable attorneys' fees, and any liability by DeMayo Law for these claims (which has been and is again denied), are within the scope of the MSA Indemnity Agreement.

**FIRST CAUSE OF ACTION**
**(28 U.S.C. § 2201-Declaratory Judgment)**

85.     DeMayo Law restates the allegations contained in paragraphs 1 through 84 of these Crossclaims and incorporates them by reference as if fully set forth herein.

86.     Under North Carolina law, a contract implied-in-fact arises when an obligation is implied or presumed by the parties' actions. As a result, courts need not look at an express written agreement, but at the parties' actions showing an implied offer and acceptance. To that end, North Carolina law does not require contracts to be written. An oral agreement, which satisfies the required contractual elements, is binding on the parties.

87.     Beginning in 2023, Lacuna/Old Converge, through counsel, opened negotiations with Newman to resolve his complaints in this matter.  Lacuna/Old Converge did so pursuant to the MSA Indemnity Agreement and at no time reserved any rights.

88.     Beginning in June 2024, New Converge conducted negotiations through its counsel on behalf of DeMayo Law for the same claims.

89.     At no time in 2024 during the extensive course of dealing between DeMayo Law and New Converge did New Converge state that it had no contractual or indemnity obligation to DeMayo Law because of the bankruptcy of Old Converge.

90.     To the contrary, New Converge agreed to indemnify DeMayo law and resolve the Plaintiff's claims on his behalf, using the MSA Indemnity Agreement.

91.     Once this litigation commenced, New Converge, through counsel, entered an appearance on behalf of DeMayo Law to file a Motion to Dismiss. DeMayo Law relied on this

34

appearance and permitted New Converge's counsel to act on its behalf in reasonable reliance on New Converge's continued acknowledgment of its indemnification obligations as defined by the terms of the MSA Indemnity Agreement.

92. In doing so, New Converge solicited confidential and otherwise privileged information from DeMayo Law to assist it in drafting pleadings and proposed negotiations with Plaintiff's counsel.

93. New Converge also transmitted to DeMayo Law a proposed indemnity and joint defense agreement for review. In the indemnity agreement, New Converge's counsel confirmed on behalf of New Converge that it had "stepped into" and assumed the rights and obligations of Lacuna/Old Converge under the MSA Indemnity Agreement.

94. New Converge, through its conduct—including retaining counsel to negotiate with Plaintiff, entering an appearance on DeMayo Law's behalf, soliciting privileged information, and transmitting a draft indemnification agreement which affirmed that New Converge had agreed to the obligations of the MSA Indemnity Agreement—led DeMayo Law to reasonably understand and rely upon the fact that New Converge agreed to indemnify DeMayo Law in a manner consistent with the terms of the MSA Indemnity Agreement.

95. By entering an appearance of behalf of DeMayo Law, seeking confidential information, and sending a draft indemnification agreement, New Converge offered, either expressly or impliedly, to indemnify DeMayo Law under the terms of the indemnity provisions of the MSA Indemnity Agreement.

96. DeMayo Law accepted New Converge's indemnification offer by providing New Converge with confidential and otherwise privileged information to assist New Converge in drafting pleadings and negotiating with Plaintiff's counsel, by permitting New Converge to

negotiate with Newman through its counsel, and by refraining from retaining counsel or seeking to independently resolve Newman's claims, all in reliance on New Converge's agreement to indemnify DeMayo Law under the terms of the MSA Indemnity Agreement.

97. These acts and omissions constitute good and valuable consideration which supports the existence of a contract, whether express or implied-in-fact, between DeMayo Law and New Converge, which adopted the terms and conditions of the MSA.

98. There is an actual, ongoing controversy between DeMayo Law and New Converge over whether New Converge is obligated to indemnify DeMayo Law against Newman's claims.

99. New Converge's refusal to indemnify DeMayo Law is causing DeMayo Law to suffer ongoing injury, and a decision in DeMayo Law's favor would redress that injury to DeMayo Law.

100. The Court should declare that New Converge and DeMayo Law entered into a an express or implied-in-fact contract which adopted the indemnification terms of the MSA Indemnity Agreement.

101. A declaration that the Parties entered into a contract, either express or implied-in-fact, would serve a useful purpose in clarifying and settling the legal relations at issue, and it would terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to DeMayo Law's claims.

**SECOND CAUSE OF ACTION**
**(Breach of Express Oral Contract/Contract Implied-in-Fact)**

102. DeMayo Law restates the allegations contained in paragraphs 1 through 101 of these Crossclaims and incorporates them by reference as if fully set forth herein.

36

103. Under the Parties' contract, New Converge agreed to indemnify DeMayo law and resolve Newman's claims, as required under the terms and provisions of the MSA Indemnity Agreement.

104. Under the MSA Indemnity Agreement, New Converge must "indemnify, defend and hold harmless" DeMayo Law against and from all losses, damages, liabilities, costs, and expenses attributable to any third-party claim, proceeding, action, lawsuit or investigation arising out of negligence or willful misconduct.

105. In Plaintiff's First Amended Complaint, Newman alleges Lacuna/Old Converge violated both state and federal law in performing its services as DeMayo Law's agent and that, as a result of those violations, DeMayo Law is vicariously liable (which has been and is again denied). See generally Doc. No. 47. These claims trigger New Converge's indemnity obligations under the MSA Indemnity Agreement.

106. New Converge, which had agreed to indemnify DeMayo Law under the terms of the indemnity provisions of the MSA Indemnity Agreement, therefore it is required to indemnify DeMayo Law.

107. New Converge has now breached its obligation by refusing to indemnify DeMayo Law and denying that there is an indemnity agreement at all.

108. DeMayo Law is entitled to full indemnification from New Converge under a contract, whether express or implied-in-fact, as set forth by the terms and conditions of the MSA Indemnity Agreement for any liability DeMayo Law is found to have to Newman or the putative class members arising from the conduct of Lacuna/Old Converge or its contractors.

109. DeMayo Law is entitled to damages for New Converge's breach, including DeMayo Law's attorneys' fees, costs and other expenses incurred in defending this action to date,

37

and entitling DeMayo Law to recover from New Converge any sums for which it may be held liable to Plaintiff or the putative class members under the terms and conditions of the MSA Indemnity Agreement.

## THIRD CAUSE OF ACTION
### (Estoppel/Waiver)

110. DeMayo Law restates the allegations contained in paragraphs 1 through 109 of this Crossclaim and incorporates them by reference as if fully set forth herein.

111. Beginning in 2023, Lacuna/Old Converge, through counsel, opened negotiations with Plaintiff to resolve the complaint he filed with the Better Business Bureau.

112. These negotiations, which took place with DeMayo Law's knowledge and consent, continued throughout 2024 and after Lacuna/Old Converge filed for bankruptcy and New Converge came into existence and purchased the assets of Lacuna/Old Converge.

113. At no time during an extensive course of dealing between DeMayo Law and New Converge from June 19, 2024, through April 29, 2025, did New Converge state that it had no contractual or indemnity obligation to DeMayo Law.

114. Once this litigation commenced, New Converge, through counsel, entered an appearance on behalf of DeMayo Law to file a Motion to Dismiss. DeMayo Law permitted this appearance in reasonable reliance on New Converge's prior and continuing acknowledgment of its indemnification obligations.

115. In doing so, New Converge solicited confidential and otherwise privileged information from DeMayo Law to assist it in drafting pleadings and negotiating with Plaintiff's counsel.

116. New Converge also transmitted to DeMayo Law a proposed indemnity and joint defense agreement for review. New Converge did not raise any issues concerning its indemnity

obligation and, to the contrary, affirmed that it had "stepped into" the rights and obligations of Lacuna/Old Converge under the MSA Indemnity Agreement.

117. New Converge, through its conduct—including retaining counsel to negotiate with Plaintiff, entering an appearance on DeMayo Law's behalf, soliciting privileged information, and transmitting a draft indemnification agreement—led DeMayo Law to reasonably understand and rely upon the fact that New Converge did not contest its obligation to indemnify DeMayo Law against Plaintiff's claims. DeMayo Law's reliance was reasonable and justified given the extensive and unbroken course of dealing between the parties from June 19, 2024 through April 29, 2025.

118. DeMayo Law has fulfilled all its obligations under the contract between the parties by providing New Converge with confidential and otherwise privileged information to assist New Converge in drafting pleadings and negotiating with Plaintiff's counsel.

119. In reliance on New Converge's actions and representations, DeMayo Law changed its position and did not undertake independent action to defend itself or otherwise attempt to resolve Newman's claims.

120. DeMayo Law is entitled to a declaration that New Converge is estopped from challenging the validity or enforceability of its indemnification obligation as a result of its conduct, including negotiating with Plaintiff, entering an appearance on DeMayo Law's behalf, soliciting confidential information from DeMayo Law, confirming that New Converge had "stepped into" and assumed the rights and obligations of Lacuna/Old Converge under the MSA Indemnity Agreement—all without raising any issues concerning its indemnity obligation—upon which DeMayo Law detrimentally relied by forgoing independent action to resolve claims against it and by providing privileged and confidential information to New Converge's counsel.

**WHEREFORE**, having fully answered the First Amended Complaint of Plaintiff, the

Defendant-Crossclaim Plaintiff DeMayo Law Offices, LLP prays that:

1.     The Plaintiff have and recover nothing on its Complaint;

2.     The costs of this action, including DeMayo Law's attorneys' fees, be taxed against the Plaintiff to the extent allowed under applicable law, including N.C. Gen. Stat. 6-21.5;

3.     To the extent that Plaintiff or the putative class members are entitled to any recovery on the First Amended Complaint, which has been and is again denied, DeMayo Law be indemnified by Crossclaims Defendant Converge Marketing, LLC as to any sums for which it may be held liable to Plaintiff, plus interest, costs, and any applicable attorneys' fees;

4.     This Court order such further relief as it deems just and appropriate.

This the 15th day of May, 2026.

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ James P. Cooney III*
James P. Cooney III (N.C. Bar No. 12140)
Emmett J. Whelan (N.C. Bar No. 58139)
301 South College Street, Suite 3500
Charlotte, North Carolina 28202
Telephone: (704) 331-4980
Email:  Jim.Cooney@wbd-us.com
Email: Emmett.Whelan@wbd-us.com

R. Travis Campbell (C.A. No. 271580)
50 California Street, Suite 2750
San Francisco, CA 94111
Telephone: (415) 433-1900
Facsimile: (415) 433-5530
Email: travis.campbell@wbd-us.com

*Counsel for Defendant/ Crossclaim Plaintiff DeMayo Law Offices, LLP*