# Exhibit 4

## <u>CONFIDENTIAL AGREEMENT</u>

DeMayo Law Offices, LLP ("DeMayo"), SGMS Inc., d/b/a Legal Conversion Center ("LCC") and Converge Direct, LLC ("Converge" and collectively with DeMayo and LCC, the "Parties") hereby enter into this Confidential Agreement, as set forth below (the "Agreement").

**WHEREAS,** DeMayo and Converge entered into that certain Master Services Agreement dated February 1, 2022,[1] under which Converge would provide certain services to DeMayo (the "DeMayo-Converge MSA");

**WHEREAS,** DeMayo and LCC entered into that certain Master Services Agreement dated June 22, 2022, under which LCC would provide certain services to DeMayo (the "DeMayo-LCC MSA");

**WHEREAS,** DeMayo and LCC have been named as defendants in a putative class action asserting claims under the Telephone Consumer Protection Act ("TCPA") captioned *Newman v. DeMayo Law Offices, LLP and SGMS Inc., d/b/a Legal Conversion Center*, Case 3:25-cv-00042, filed in the United States District Court for the Western District of North Carolina (the "Action");

**WHEREAS,** DeMayo and LCC represent that telephone calls at issue in the Action were exclusively based upon a lead or leads that DeMayo purchased from Converge;

**WHEREAS,** DeMayo has asserted that Converge owes DeMayo indemnification pursuant to the DeMayo-Converge MSA;

**WHEREAS,** LCC has asserted that DeMayo owes it indemnification pursuant to the DeMayo-LCC MSA;

---

[1] The Master Services Agreement was entered into between DeMayo and Lacuna Ventures, LLC ("Lacuna"). Lacuna is now doing business as Converge and Converge has stepped into Lacuna's rights and obligations.

**WHEREAS,** the Parties dispute whether they owe one another any indemnification or other legal obligation with regard to the Action, but have agreed to work cooperatively together;

**WHEREAS,** Converge has retained Kelley Drye & Warren LLP ("KDW") to jointly represent it, DeMayo, and LCC, under the terms set forth in this Agreement;

**WHEREAS,** the Parties have agreed to reserve all rights with respect to the claims for indemnification, subject to the terms of this Agreement;

**IT IS HEREBY AGREED THAT,** in exchange for the terms and conditions set forth below and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as set forth below:

1. Except as provided in Paragraph 4 of this Agreement below, Converge shall, through the initial pleading stage of the Action ("Pleading Stage") indemnify, defend and hold DeMayo harmless from and against all attorneys' fees, costs and expenses incurred by KDW in defending the Action as a result of leads sold by Converge to DeMayo, which include, without limitation, the lead identified by Reference No. 10644344 (each an "Indemnified Lead").

2. DeMayo shall, through the Pleading Stage indemnify, defend and hold LCC harmless from and against all attorneys' fees, costs and expenses incurred by KDW in defending the Action. So long as DeMayo and LCC's interests remain aligned, DeMayo shall be entitled to rely upon Converge's indemnification of DeMayo to fulfill its indemnification obligations to LCC.

3. Following the Pleading Stage, the Parties agree to discuss a reasonable allocation of defense costs for the remainder of the Action, to the extent that is necessary. The Parties also agree to discuss a reasonable allocation of payment obligations for any settlement or judgment.

4. Converge shall have no indemnification or other obligations under this Agreement with respect to (and the defined term "Indemnified Lead" shall not include): (a) calls placed by DeMayo prior to September 26, 2022; (b) leads received by DeMayo from a source or sources other than Converge that are not also received from Converge; (c) calls placed that were tagged by or on behalf of DeMayo as being sourced to leads received from entities other than Converge, regardless of whether such lead was also received from Converge; (d) calls placed after the called party requested to be placed on the caller's internal do-not-call list or otherwise requested that they not receive future calls; and/or (e) damages, liabilities, losses, settlements, judgments, costs and expenses (including but not limited to reasonable attorneys' fees and costs) incurred solely as a result of DeMayo's, LCC's, or another third party's conduct, including DeMayo's, LCC's, or any third party's, alleged or actual failure to comply with the TCPA or other laws.

5. DeMayo and LCC agree that Converge will control the defense and settlement of claims involving an Indemnified Lead through the Pleading Stage, so long as the Action involves only an Indemnified Lead.

6. The Parties agree to provide reasonable cooperation to each other in connection with the defense or settlement of the Action.

7. With respect to the applicability or scope of indemnification for DeMayo and/or LCC, Converge reserves all rights and remedies available to it under the DeMayo-Converge MSA and any other applicable agreements, at law, and in equity. Converge's assumption of the defense through the Pleading Stage shall not impair or prejudice any of its rights or remedies, and no action or inaction by Converge shall be construed as a waiver of any such rights or remedies. Converge exclusively retains the right to decide, in its sole and absolute discretion, if and when its interests

may diverge from those of DeMayo and/or LCC, in which event Converge will promptly notify DeMayo and LCC of any such decision in writing. In furtherance and not in limitation of the foregoing, Converge enters into this Agreement based on the shared understanding that each of Converge, DeMayo, and LCC will confer in good faith to determine an equitable allocation of all fees and costs payable under this Agreement and any losses, damages, or liabilities of any nature arising out of or related to the Action, including without limitation payment of any settlement or judgment, other than those fees, costs and expenses incurred in connection with the Pleading Stage. Converge's decision to assume the defense through the Pleading Stage in the Action does not constitute an admission that Converge is responsible for any payment of a settlement or judgment, in whole or in part, and it may request contribution to the costs of defense at any time following the Pleading Stage. By signing this Agreement, DeMayo and LCC each expressly acknowledge and agree to the terms and conditions in this paragraph.

8. Notwithstanding Converge's assumption of the defense through the Pleading Stage, DeMayo and LCC each reserve the right to retain separate and outside counsel to represent their interests in any litigation concerning an Indemnified Lead. Any counsel retained by either DeMayo or LCC shall be at their own expense. Converge shall not be responsible for any attorneys' fees, expenses, and costs incurred by DeMayo's and LCC's retained counsel, except for costs explicitly agreed upon in writing by KDW and DeMayo's Counsel and/or LCC's Counsel.

9. The Parties agree to keep this Agreement and its terms confidential except as necessary to comply with applicable law, to respond to subpoenas after giving notice thereof to all other parties to this Agreement, or to compile financial statements, tax returns, regulatory filings, or seek legal advice.

10.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective agents, next of kin, executors, administrators, legal representatives, successors and assigns.

11.  This Agreement, and any claim, controversy, or dispute arising under or related to this Agreement, will be governed by, and its terms will be construed, interpreted, and enforced in accordance with, the laws of the State of New York without regard to conflict of law principles. Each party hereby consents and agrees that all disputes arising out of or relating to this Agreement shall be resolved via binding arbitration by the American Arbitration Association ("AAA") under its commercial rules, the terms of which are expressly incorporated by reference herein. Arbitration shall take place before one arbitrator mutually agreed upon by the parties; if the Parties do not agree, a neutral arbitrator shall be selected in accordance with AAA rules.  Judgment on the award may be entered in any court having competent jurisdiction.  This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

12.  This Agreement may be executed in counterparts, and may be executed by facsimile, and as so executed shall constitute one agreement.

13.  This Agreement reflects the entire agreement by and between the Parties, and no statement, promise or inducement that is not contained herein shall be valid and binding. If any provision or portion of this Agreement is held invalid, void or unenforceable under any applicable statute or rule of law, only that provision, or portion thereof, shall be deemed omitted from this Agreement, and only to the extent to which it is held invalid, and the remainder of the Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the Parties sign below indicating their intent to be bound by all of the terms and conditions of this Agreement.

Dated this __ day of April, 2025.

DeMayo Law Offices, LLP

By: _____
Name:
Title:

SGMS Inc., d/b/a Legal Conversion Center

By: _____
Name:
Title:

Converge Direct, LLC

By: _____
Name:
Title: