

May 13, 2025

**Via Email**

DeMayo Law Offices, LLP
c/o Jim Cooney, Esq.
Womble Bond Dickinson LLP
301 S. College Street, Suite 3500
Charlotte, NC 28202

Re:     *Newman v. DeMayo Law Offices, LLP et al.*, No. 3:25-cv-00042-KDB-SCR (W.D.N.C.)

Dear Jim:

As you know from our prior correspondence, this firm represents Converge Marketing, LLC. I write with respect to the above-captioned litigation (the "Action") and to follow up on conversations that I understand you have had with Kelley Drye & Warren LLP regarding purported indemnification obligations by Converge Direct, LLC ("Old Converge") as well as the demand made to Converge Marketing, LLC ("New Converge").

For the reasons set forth below, New Converge denies any obligation to indemnify DeMayo Law Offices, LLP ("DeMayo") related to the Action.  This position is based upon the applicable contract as well as the fact that, on December 7, 2023, Old Converge filed for bankruptcy in the case entitled *In re Troika Media Group, Inc. et al.* No. 23-11969 (DSJ) (S.D.N.Y.) (the "Bankruptcy Proceeding").  The assets of Old Converge (and its affiliates) were sold to a purchaser through a sale process that was supervised and approved by the bankruptcy court.  The purchaser did not assume any liability related to the Action. Accordingly, any claim that DeMayo conceivably has against Old Converge is limited to a recovery from the bankruptcy estate.  DeMayo, however, did not submit a proof of claim in advance of the bar date in the Bankruptcy Proceeding, notwithstanding that DeMayo was served with notice of the same.

## I.     Background

***The Relationship Between the Parties.***  On or about February 1, 2022, DeMayo entered into a Master Services Agreement ("Lacuna MSA") and Statement of Work with Lacuna Ventures, LLC ("Lacuna") pursuant to which Lacuna was to provide media and marketing services to DeMayo.  On March 22, 2022, Troika Media Group, Inc. ("Troika") acquired Old Converge.  *In re Troika Media Grp*, No. 23-11969, Dkt. 11 (Declaration of G. Grant Lyon (the "Lyon Decl.")) ¶ 5.  Troika also owned Lacuna.  *Id.* ¶ 92.  Later in 2022, and pursuant to the Lacuna MSA, Lacuna agreed to provide services to DeMayo to support DeMayo's efforts to attract clients related to the Camp LeJeune claims.  Neither Old Converge nor Lacuna provided any further services related to the Camp LeJeune campaign to DeMayo after December 7, 2023.



There is no contractual relationship between either Old Converge or Lacuna, on the one hand, and DeMayo's co-defendant in the Action, SGMS, Inc. d/b/a Legal Conversion Center ("LCC"), on the other hand.

***Newman's Claim.*** On or about April 28, 2023, Wesley Newman sent a demand to LCC alleging violations under the Telephone Consumer Protection Act ("TCPA") concerning telephone calls he allegedly received beginning in November 2022. LCC claimed it was not responsible for the calls at issue.

In May 2023, the parties engaged in discussions with Newman on an individual basis, which appeared close to resulting in a settlement of his individual claims. Before any agreement could be finalized, an individual purporting to act on behalf of DeMayo posted a public comment on the Better Business Bureau, which stated that Newman "regularly engage[s] in these types of 'scams.'" Newman himself directly attributed this statement to why the parties were unable to reach an individual settlement, stating that the comment "will also cause some difficulties when it comes to agreeing to" any settlement.

Notwithstanding this public statement from DeMayo, Newman nonetheless made a settlement demand on June 19, 2024. Newman demanded $3,000 attributable to the calls, and a "separate" $10,000 payment attributable to a non-disclosure agreement. Newman further demanded a public apology from DeMayo for his Better Business Bureau comment. Old Converge pushed for a settlement to resolve the matter, but no agreement was ultimately consummated. On January 21, 2025, Newman filed the Action, seeking to recover for alleged TCPA violations on a putative class basis.

***The Bankruptcy Proceeding.*** On December 7, 2023, Troika, along with its subsidiaries, Old Converge and Lacuna, filed for bankruptcy. The purpose of the Bankruptcy Proceeding was to consummate a sale of assets for all debtors, including Old Converge and Lacuna, to allow for distribution of the proceeds to creditors under the supervision of the bankruptcy court. (Lyon Decl. ¶ 4.)

On or about January 9, 2024, DeMayo was served with a notice that the deadline to submit a proof of claim in the Bankruptcy Proceeding was February 9, 2024. *In re Troika Media Grp.*, No. 23-11969-dsj, Dkt. 173 at Exs. C, F (S.D.N.Y. Feb. 5, 2024). DeMayo was served with notice of the bar date in the Bankruptcy Proceeding but did not submit a proof of claim in advance of the deadline.

On February 8, 2024, Judge Jones entered an order approving the sale of the assets of the debtors, including Old Converge and Lacuna, "free and clear" of any liabilities. *In re Troika Media Grp.*, No. 23-11969-dsj, Dkt. 177 (S.D.N.Y. Feb. 8, 2024). The purchaser did not assume any liabilities related to the Newman claim and also did not assume the Lacuna MSA. *Id.* Ex. 1, at 27; *see also id.* Ex. 2.

Following the asset sale, the purchaser created a new Converge Direct, LLC entity. Subsequently, the post-asset sale entity referred to as "New Converge" formally changed its name to "Converge Marketing, LLC" in March 2025.

## II. There Is No Contractual Indemnification Obligation to either DeMayo or LCC



As an initial matter, under the MSA, the indemnification events are defined as any claims "related to or arising out of (i) any breach by the Indemnifying Party of any representation, warranty or covenant of the Indemnifying Party contained in this Agreement; (ii) the negligence or willful misconduct by or on behalf of the Indemnifying Party in connection with the performance or lack of performance of the Indemnifying Party's rights or obligations under this Agreement; or (iii) the Indemnifying Party's infringement of any third-party Intellectual Property Right." (MSA ¶ 10.)

The indemnification obligations under the MSA are not triggered. As the MSA specifically states, "[DeMayo] agrees that [Lacuna/Old Converge] is not liable for the acts and omissions of any subcontractor or vendor that it utilizes to perform the Services or any of its other obligations under this Agreement or any SOW." (MSA ¶ 3(d).) As we have discussed, the lead in question for Newman was transferred to LCC by Digital Media Solutions, inc. ("DMS") on or about November 22, 2022.

To the extent DeMayo has any claims for indemnification for Mr. Newman's lead, the sole party against which it must obtain indemnification is DMS or any of its respective vendors, subcontractors, or affiliates. As for Lacuna (or Old Converge to the extent it was providing services under the MSA), the MSA provides that it "is not liable."

With respect to LCC, Old Converge, Lacuna and New Converge are not in any contractual privity with LCC or with any of its affiliates or subsidiaries. LCC's sole contractual remedies, to the extent any exist, arise from the Master Service Agreement dated June 22, 2022 between DeMayo and LCC. We take no position on DeMayo and LCC's respective obligations under the DeMayo-LCC Master Service Agreement.

### III.    Even If Any Indemnification Obligations Existed, They are Limited

While New Converge maintains that Old Converge and Lacuna have no indemnification obligations whatsoever, it further notes that the MSA does not provide DeMayo with any indemnification rights other than those already voluntarily provided in good faith.

Under the MSA, "[i]n the event that [DeMayo] identifies any potential fraud or errors in any marketing leads" provided by Lacuna, Old Converge or any company over which they "can be reasonably deemed to have direct control over or that it should have been able to prevent with due regard for the source or activity that it utilized in generating a fraudulent lead[,] . . . the *exclusive* obligation . . . shall be to provide a credit for an amount that [Old Converge/Lacuna] determines to be appropriate at its sole and absolute judgement and as reasonably exercised, is appropriate  . . ." (MSA ¶ 4(h)(i) (emphasis added).)

This obligation, to the extent it exists, has been more than satisfied here. As you are aware, although New Converge has consistently reserved all rights with respect to indemnification, it has, out of respect for the relationship that existed between Old Converge and DeMayo pre-bankruptcy, funded the defense of the Action through the pleading stage. To the extent Newman's claim survives past the pleading stage, there is no obligation to DeMayo (or LCC) beyond that point. Indeed, this amount has already greatly exceeded the $3,000 payment demanded by Newman as compensation for the calls that



allegedly serve as the basis of his claim.  Furthermore, New Converge believes that this claim could have been resolved, absent escalation of these events by DeMayo's decision to publicly antagonize Newman—an intervening event that has driven the settlement value of this Action and increased legal costs for all involved.

### IV.     New Converge Has No Obligation to DeMayo or LCC

As set forth above, the Newman claim and the Action all relate to conduct that occurred prior to the initiation of the bankruptcy proceeding.  *See generally* Complaint.  The purchaser of Old Converge's assets did not assume any liability related to the Newman claim or the Action and therefore New Converge is not responsible for any pre-petition liabilities.  *See In re Troika Media Grp.*, No. 23-11969-dsj, Dkt. 177 at Exs. 1 & 2 (S.D.N.Y. Feb. 8, 2024).  Accordingly, any claim against Old Converge or Lacuna for any of the sale proceeds must occur in connection with the Bankruptcy Proceeding.

Further, although DeMayo was served with notice of the claim bar date, it did not submit a proof of claim in the bankruptcy and that the deadline to do so has now past.

### V.     Conclusion

In light of the history among the parties here, despite the absence of any legal obligation to do so, New Converge has funded the defense of the Action through the pleading stage.  That obligation is now complete and New Converge denies any obligation to DeMayo related to the Action whatsoever as the conduct giving rise to the Action occurred prior to the Bankruptcy Proceeding and was not assumed.  To the extent DeMayo intends to pursue an indemnification claim against Old Converge or Lacuna, the appropriate forum to do so is in the Bankruptcy Proceeding.

Please let me know if you have any questions.  The Converge and Lacuna entities reserve all rights.

Very truly yours,

*Marie Scheibert*

Marie Scheibert
Principal
Data Points Law, LLC
marie@datapointslaw.com
774-477-0851

cc: Ying Miao, Chief Financial Officer, Converge Marketing LLC