# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### Case No: 3:25-cv-00042-KDB-DCK

| | |
|---|---|
| WESLEY NEWMAN, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DEMAYO LAW OFFICES, LLP, CONVERGE MARKETING, LLC F/K/A CONVERGE DIRECT, LLC, and SGMS INC. D/B/A LEGAL CONVERSION CENTER<br><br>Defendants. | **DEFENDANT DEMAYO LAW OFFICES, LLP'S RESPONSE IN OPPOSITION TO CONVERGE MARKETING, LLC'S MOTION TO DISMISS** |

## INTRODUCTION

DeMayo Law Offices, LLP ("DeMayo Law") paid Converge Marketing Direct, LLC ("Old Converge") more than $4 million to run a marketing campaign notifying the public about the Camp Lejeune settlement fund.[1] Old Converge promised to indemnify DeMayo Law for claims tied to Old Converge's acts or its subcontractors' acts. When Wesley Newman complained that he had received TCPA-violating calls, DeMayo Law notified Old Converge. Old Converge hired counsel and began settlement talks. But during those negotiations, Old Converge declared bankruptcy. Then, in a prearranged transaction, Converge Marketing, LLC ("New Converge") quickly bought Old Converge's assets under a Bankruptcy Court Sale Order allowing the assets to be sold "free

---

[1] There is no dispute that DeMayo Law did not make "cold calls" to anyone. DeMayo Law understood that the marketing campaign would use ads with an "800" number that interested persons could call. It also understood that the campaign would not include "cold calls." Plaintiff claims that DeMayo Law, despite making none of the calls at issue, is vicariously liable for calls it did not know anyone made—if anyone made them—and that were not part of the marketing campaign.

and clear." The bankruptcy and Sale Order effectively wiped out Old Converge's duties to DeMayo Law.

Months later, Newman tried to resume settlement talks. He contacted Old Converge's counsel, who notified New Converge. New Converge then retained the same attorney to negotiate Newman's claims. New Converge's counsel asked DeMayo Law for authority to make settlement offers, sought DeMayo Law's views, and requested privileged information. DeMayo Law relied on New Converge and its counsel to protect and indemnify it. It did not negotiate with Newman or retain its own counsel. DeMayo Law understood that New Converge would indemnify it on the same terms as Old Converge—terms well known to New Converge because the same employees who created the Old Converge relationship with DeMayo Law now worked for New Converge.

When the negotiations failed, Newman sued. DeMayo Law again reminded New Converge of its indemnification agreement and that New Converge's counsel had represented DeMayo Law would be indemnified. New Converge hired new litigation counsel for DeMayo Law. That counsel appeared for DeMayo Law, moved to dismiss Newman's claims on DeMayo Law's behalf, and sent DeMayo Law a proposed litigation-indemnity agreement that tried to narrow New Converge's obligation. The proposal stated as a fact that New Converge had entered into an indemnity agreement with DeMayo Law by "stepping into [Old Converge's] rights and obligations" under Old Converge's contract with DeMayo Law. For nearly a year, New Converge sought and received privileged information from DeMayo Law. DeMayo Law let New Converge control the defense and relied on its promise of indemnity. New Converge never suggested that it had not agreed to indemnify DeMayo Law or that it owed no duty to do so.[2]

---

[2]New Converge had a strong incentive to indemnify DeMayo Law: it wanted to reestablish the lucrative business Old Converge had with DeMayo Law. That incentive is supported by the alleged course of dealing and by New Converge's own description of post-bankruptcy efforts to earn back

Then, in late April 2025, with no warning, New Converge announced that it owed DeMayo Law nothing and would end the work of the counsel it had hired for DeMayo Law. DeMayo Law now sues New Converge to enforce the agreement and obligations New Converge assumed after the bankruptcy sale.

New Converge responds that DeMayo Law is trying to hold it liable for Old Converge's conduct. That is wrong. DeMayo Law does not claim that New Converge must answer for Old Converge's prior agreements or pre-bankruptcy conduct. DeMayo Law's crossclaims rest on New Converge's *own* post-sale conduct. That conduct began in June 2024 and continued through April 29, 2025. It formed a valid and enforceable agreement under North Carolina law and estops New Converge from denying its duties. The Sale Order cannot shield New Converge from its own agreements or from the harm caused by its breach. Nor does the Sale Order put New Converge or its acts beyond this Court's reach. The Court should deny New Converge's motion.[3]

## SUMMARY OF ARGUMENT

New Converge filed only a three-page "speaking" motion with exhibits and no supporting brief. That filing violates LCvR 7.1(c), the Consent Briefing Schedule (Doc. No. 59), and Judge Keesler's May 8, 2026, text order requiring any "party seeking a decision on any preserved motion [to] file a separate motion and supporting brief" (quoting LCvR 7.1(c)(1)). (Doc. No. 61.) Without

---

customer loyalty. (Doc. No. 60 ¶¶ 36, 46, 94–97; Doc. No. 61-2 at p. 3.) That incentive and opportunity, along with the reliance New Converge induced, provided sufficient consideration for a contract under North Carolina law. (Doc. No. 60 ¶¶ 94-97.)

[3]Local Rule 7.1(c) requires a brief with a motion to dismiss. LCvR 7.1(c). New Converge filed no brief with its motion. The Court may deny the motion on that basis alone. Even so, DeMayo Law addresses the issues apparently raised in the Motion on the merits.

a brief, DeMayo Law must infer New Converge's legal arguments (and the authority supporting them) from the motion and attached correspondence. [4]

On the face of its Motion, New Converge invokes Rules 12(b)(1) and 12(b)(4). In the alternative, it asks this Court to transfer the case to the Bankruptcy Court for the Southern District of New York. The Court should deny these requests.

First, New Converge appears to argue under Rule 12(b)(1) that the Bankruptcy Court's Sale Order strips this Court of jurisdiction. But the only way in which the Bankruptcy Court would have any jurisdiction would be if DeMayo Law's claims failed to adequately plead there was a new contract with New Converge and sought to hold New Converge liable based on Old Converge's now discharged obligations. But in so moving, New Converge did not seek dismissal under Rule 12(b)(6) on the theory that DeMayo Law failed to state a contract claim. Nor did it argue that DeMayo Law failed to plead a valid and enforceable North Carolina agreement or estoppel. The Court must thus treat those claims as adequately pleaded. And, because New Converge does not challenge the adequacy of those allegations, the Sale Order cannot bar claims based on New Converge's own post-sale conduct, conduct which formed the basis for a new North Carolina contract. Put simply, a "free and clear" sale order does not bar claims based solely on the purchaser's own post-closing conduct. *See In re Motors Liquidation Co.*, 590 B.R. 39, 60-61 (S.D.N.Y. 2018).

---

[4]New Converge tries to excuse its rule violations by saying it does not want to spend money briefing this matter: "In the interest of preserving New Converge's assets from further dissipation by being forced to answer in the wrong forum for the alleged actions of Old Converge . . . ." (Doc. No. 61 at p. 4.) But New Converge's asserted desire to preserve assets does not excuse noncompliance with the Local Rules or the Court's order. Nor does incorporation of counsel letters give DeMayo Law or the Court a proper supporting brief.

Under Rule 12(b)(1), this Court has subject-matter jurisdiction over DeMayo Law's indemnity and estoppel claims because those claims arise from New Converge's conduct, not Old Converge's obligations. The new agreement with New Converge arose under North Carolina law. Therefore, this Court has jurisdiction—through diversity or supplemental jurisdiction—to decide issues related to that agreement.

Second, New Converge cites Rule 12(b)(4), apparently to claim insufficient process. But it never explains why process failed. It also fails to tell the Court that it voluntarily accepted service as Converge Marketing, LLC and "waiv[ed] any objections to . . . service." (Doc. No. 49.) New Converge may argue that the caption misnames it by adding "f/k/a Converge Direct, LLC" after its correct legal name. At most, that is a misnomer. Both the Amended Complaint and DeMayo Law's crossclaims allege that New Converge and Old Converge are separate entities. Nothing suggests that the "f/k/a" phrase after New Converge's correct legal name invalidates service or the pleading.

Third, New Converge argues that venue is improper. But it never cited or moved under Rule 12(b)(3), so it waived that defense. Fed. R. Civ. P. 12(h)(1)(A), (B). Before this Motion, New Converge also answered Newman's Amended Complaint (Doc. No. 51), asserting twenty-five defenses. None contested venue. By failing to raise that defense to Newman's claims, New Converge conceded that this Court is a proper venue for Newman's claims. And because venue is proper on the Amended Complaint, DeMayo Law's related indemnity claim also belongs here.

New Converge finally seeks transfer to the Bankruptcy Court under 28 U.S.C. §§ 157, 1404, and 1406. But New Converge offers no evidence or argument that witness or party convenience warrants transfer under § 1404. Nor does it show that § 1406 requires transfer to cure a venue defect, especially since it waived venue objections. And because DeMayo Law seeks relief

5

from New Converge for its own promises and acts, Section 157 does not independently authorize a transfer of this TCPA action and DeMayo Law's state-law crossclaims to a bankruptcy court in another district.

New Converge suggests that because Newman pleads successor liability against New Converge, Newman's claim must proceed in the Bankruptcy Court against Old Converge—and DeMayo Law's claims based on New Converge's acts must go there too. That does not follow. A party may choose to take on another entity's duties, even if that entity is bankrupt, and thereby form a new, stand-alone duty. *See Carter Enters., Inc. v. Ashland Specialty Co., Inc.*, 257 B.R. 797, 803 (S.D. W. Va. 2001) (recognizing that a successor entity may freely assume an otherwise discharged duty outside bankruptcy). The pleadings show that New Converge retained counsel to negotiate Newman's claims on DeMayo Law's behalf while never telling Newman that New Converge controlled the talks. By doing so, New Converge assumed responsibility for the liability it chose to negotiate and control. And in any event, DeMayo Law's claims and the theory on which they rest are wholly different from Newman's claims.

Finally, New Converge argues that Old Converge will be a necessary party and that the Court must transfer this case to the Bankruptcy Court. But New Converge did not move under Rule 19; instead, it explicitly reserved the right to make a separate Rule 19 motion. (Doc. No. 61 at p. 4 n.6.) So that issue is not before the Court. In any event, Old Converge is not necessary to DeMayo Law's claims. Those claims rest only on New Converge's post-sale acts and agreements, post-sale acts and agreements for which Old Converge bears no liability.

# FACTUAL BACKGROUND

I.  Pre-Bankruptcy Relationship between DeMayo Law and Old Converge.

In February 2022, DeMayo Law signed a Master Services Agreement ("MSA") with Lacuna Ventures, LLC ("Lacuna"). (Doc. No. 60 ¶ 6.)[5] Old Converge later bought Lacuna. *Id.* ¶ 7. The MSA required Lacuna and Old Converge to hold DeMayo Law harmless from losses and liabilities caused by any breach, negligence, or willful misconduct. *Id.* ¶¶ 11–12. The MSA covered services to create and run a media and marketing campaign for the Camp Lejeune toxic-tort fund. *Id.* ¶ 9. DeMayo Law paid about $4.78 million to Old Converge and its affiliates under the MSA. *Id.* ¶ 46. The campaign would alert the public to the fund and provide a telephone number for interested persons to call. *Id.* ¶¶ 14-15. LCC would then screen callers to determine whether they qualified to make a claim and wanted representation. *Id.* ¶ 15. The campaign did not include "cold calls," and DeMayo Law made no calls to anyone who had not first contacted the Firm. *Id.* ¶¶ 15–17.

In November 2022, Newman called DeMayo Law and claimed that someone had placed TCPA-violating calls on DeMayo Law's behalf. DeMayo Law notified Old Converge because any such calls would have violated the MSA and fallen outside the campaign's structure. *Id.* ¶¶ 18-20. In May 2023, Newman escalated his complaints and filed a Better Business Bureau complaint against DeMayo Law. Old Converge responded by retaining counsel to deal with Newman on DeMayo Law's behalf. In May 2023, Old Converge's counsel offered to settle with Newman. *Id.* ¶¶ 21–25. The record does not reveal why Newman did not respond to Old Converge's last settlement offer, despite exchanges and other offers. *Id.* ¶ 26.

---

[5] All paragraph citations to Doc. No. 60 reference Crossclaim paragraphs.

On December 11, 2023, Lacuna, Old Converge, and their parent filed for Chapter 11 bankruptcy in the Southern District of New York. *Id.* ¶ 27. Less than two months later, the Bankruptcy Court approved the sale of Old Converge's assets to BTC Converge Buyer LLC—the entity that became New Converge. *Id.* ¶ 28. The sale was "free and clear" of claims. (Doc. No. 61-4 ¶¶ 8–9.) Many of Old Converge's employees then began working for New Converge, and New Converge kept using the "converge.com" email domain. (Doc. No. 60 ¶ 28.)

II.     New Converge's Post-Sale Course of Dealing with DeMayo Law

What followed the Sale Order is the heart of DeMayo Law's claims.

On June 19, 2024, Newman responded to Old Converge's settlement offer from the prior year. That same day, Old Converge's attorney told New Converge employee Rick Sanchez—who had formerly worked at Old Converge and dealt with DeMayo Law—about Newman's response. (Doc. No. 60 ¶¶ 29–31.) Counsel did not tell DeMayo Law about the response at that time. *Id.* ¶ 31. Roughly three weeks later, Old Converge's counsel told Newman he was "in the process of being retained to address your email and dispute." *Id.* ¶ 32. DeMayo Law was not told of these communications until July 12, when Old Converge's counsel said he was "in contact with Converge . . . to try to resolve this matter, once we are retained." *Id.* ¶ 33. On July 31, 2024, that attorney told DeMayo Law that "Converge has retained our firm to try to resolve the matter." *Id.* ¶ 35.

New Converge's counsel then spoke at length with DeMayo Law's principal. Based on counsel's retention and statements, DeMayo Law believed New Converge would resolve the matter and protect DeMayo Law under the Old Converge agreement's indemnity terms. *Id.* ¶ 38. DeMayo Law shared confidential information with New Converge's counsel, did not retain its own counsel, did not negotiate with Newman, and let New Converge control the matter. *Id.* ¶ 44.

By August, New Converge's counsel told New Converge executives that DeMayo Law was "on board" with the settlement approach. *Id.* On August 26, 2024, New Converge's counsel made a settlement offer to Plaintiff on DeMayo Law's behalf. *Id.* ¶ 42. But New Converge did not resolve Newman's claims. *Id.* ¶ 48.

On January 21, 2025, Plaintiff filed this lawsuit. (Doc. No. 1; Doc. No. 60 ¶ 49.) After service, DeMayo Law contacted New Converge's counsel and noted that counsel had represented that New Converge would indemnify DeMayo Law. *Id.* ¶ 51. Counsel told DeMayo Law that he had left his prior firm and would need a new retention agreement for the litigation. New Converge's counsel then contacted Ric Sanchez at New Converge to tell him about the case and explain that New Converge and DeMayo Law would have to retain his new firm. *Id.* ¶¶ 52–53.

On February 6, 2025, DeMayo Law was told that Marie Scheibert, New Converge's internal counsel, would coordinate the introduction of the lawyers who would handle the case. *Id.* ¶ 55. New Converge then retained Kelley Drye & Warren LLP to serve as DeMayo Law's trial counsel. (Doc. No. 60, Ex. 3.) Kelley Drye sought pro hac vice admission to represent DeMayo Law, then moved to dismiss on behalf of DeMayo Law (and LCC) under its engagement with New Converge. (Doc. No. 60 ¶¶ 57-59; *see also* Doc. No. 11.) As with New Converge's first counsel, DeMayo Law shared confidential information with Kelley Drye, relied on Kelley Drye to protect its interests, and changed its position based on New Converge's promise to represent and indemnify it. (Doc. No. 60 ¶ 60.)[6]

---

[6] Kelley Drye repeatedly "reserve[d] all rights" as to indemnity, despite New Converge's current claim that no agreement existed. That raises a basic question: what "rights" could Kelley Drye reserve if no agreement created them and new Converge had no obligation whatsoever to DeMayo Law? *Id.* ¶ 61.

On April 1, 2025, Kelley Drye sent DeMayo Law a proposed indemnity agreement that sought to limit the scope of New Converge's indemnity. The proposal stated as a factual premise that New Converge had "stepped into Lacuna's rights and obligations" under the MSA. (Doc. No. 60, Ex. 4; Doc. No. 60 ¶¶ 64-68.) It sought to cap New Converge's payment duty. DeMayo Law did not sign the agreement or accept that limitation. On April 23, 2025, Kelley Drye filed a Reply supporting the motion to dismiss which it earlier filed for DeMayo Law. (Doc. No. 60, Ex. 3.)

Less than a week later, without warning, New Converge claimed it had no duty to defend or indemnify DeMayo Law. (Doc. No. 60 ¶ 74.) New Converge confirmed that reversal in a May 13, 2025, letter to DeMayo Law's counsel. (Doc. No. 61-3; Doc. No. 60 ¶¶ 75-76.)

From June 19, 2024, through April 29, 2025, DeMayo Law relied on what New Converge said and did. DeMayo Law did not hire its own counsel or negotiate with Plaintiff on its own. It shared confidential and privileged information with New Converge and its lawyers. It also allowed New Converge to control the matter and protect DeMayo Law's interests. (Doc. No. 60 ¶¶ 44–45, 77.) New Converge invited that reliance; DeMayo Law reasonably and foreseeably relied on it. That reliance reflected New Converge's agreement to indemnify DeMayo Law for these claims. *Id.* ¶¶ 86, 94, 117.

## LEGAL STANDARD

A Rule 12(b)(1) motion challenges the court's subject-matter jurisdiction. *See Biglow v. Speaks*, No. 3:24-CV-00996-KDB-SCR, 2025 WL 2417731, at *1 (W.D.N.C. June 3, 2025) (citing Fed. R. Civ. P. 12(b)(1)). The plaintiff must prove that subject-matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). Because "federal courts are courts of limited jurisdiction, constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute," courts do not presume jurisdiction. *See In re Bulldog*

*Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998) (quotation omitted); *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999).

Title 28 U.S.C. §§ 1404 and 1406 permit transfer of venue. Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). A § 1406(a) transfer is "based on improper venue" and applies when a case has been "filed in the wrong district and needs to be transferred." *Leonard v. Mylan, Inc.*, 718 F. Supp. 2d 741, 743–44 (S.D. W. Va. 2010); *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201 n.4 (4th Cir. 1993). Section 1404(a), by contrast, allows a district court to transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice ... to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Section 1404(a) is generally reserved for cases that are filed in the proper district, but in which convenience dictates transfer to another district." *Leonard*, 718 F. Supp. 2d at 743. "Each of these statutes carries its own consequences." *Id.* Still, "[t]he analysis of whether a transfer is 'in the interest of justice' is the same under section 1404(a) as it is under section 1406(a)." *Nichols*, 991 F.2d at 1201 n.5. Likewise, Section 157(a) allows a district court to refer bankruptcy proceedings to bankruptcy judges, while § 157(b)(5) addresses where personal-injury tort claims against a debtor are tried. *See* 28 U.S.C. § 157(a), (b)(5); *see also In re Pan Am. Corp.*, 950 F.2d 839, 844 (2d Cir. 1991).

## ARGUMENT

New Converge's Motion is both procedurally and substantively defective. Either warrants denial.

I. <u>New Converge's Motion is procedurally defective.</u>

To start, New Converge's motion has procedural flaws. First, New Converge filed only a three-page "speaking" motion with exhibits and no supporting brief. That filing violates LCvR 7.1(c), the Consent Briefing Schedule, and Judge Keesler's May 8, 2026, order requiring a separate motion and supporting brief. That failure alone warrants denial. At a minimum, the Court should hold New Converge to the limited grounds it actually invoked.

Second, New Converge invokes Rules 12(b)(1) and 12(b)(4). (Doc. No. 61.) Yet neither applies. Tellingly, New Converge does not move under Rule 12(b)(6). Nor does it argue that DeMayo Law failed to state—or to sufficiently plead—its crossclaims. So New Converge has not challenged the sufficiency of DeMayo Law's allegations, and that issue is not before the Court. New Converge instead relies on the Sale Order as a claim bar. But in order for the Sales Order to bar DeMayo Law's claims, the Court would first have to find that those claims did not state a valid cause of action for a contract based on New Converge's post-sale actions. That is a merits defense, not a jurisdictional defect. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006) (cautioning against conflating merits defenses with jurisdictional limits).

Despite invoking Rule 12(b)(1), New Converge identifies no defect in this Court's statutory jurisdiction. Nor could it. This Court has federal-question jurisdiction over Plaintiff's TCPA claims and supplemental jurisdiction over DeMayo Law's crossclaims under 28 U.S.C. § 1367. (*See* Doc. No. 60.). As to Rule 12(b)(4), New Converge waived service of process and any defects in service of process when it voluntarily waived service. Its waiver says so. Having waived those defects, New Converge cannot now seek dismissal under Rule 12(b)(4).

Simply put, procedure matters. And neither Rule cited by New Converge supports dismissal.

II.    <u>Rule 12(b)(1) Does Not Support Dismissal Because This Court Has Subject-Matter Jurisdiction Over DeMayo Law's Crossclaims.</u>

   a.  *DeMayo Law's Claims Arise from New Converge's Own Post-Sale Conduct, Not from Old Converge's Pre-Bankruptcy Obligations.*

New Converge's main argument—that the Sale Order bars all claims against it—rests on a false premise: that DeMayo Law seeks to impose Old Converge's pre-bankruptcy liabilities on New Converge. That is not what DeMayo Law alleges.

DeMayo Law's crossclaims allege that New Converge promised to defend and indemnify DeMayo Law against Newman's TCPA claims through its own post-sale conduct starting in June 2024—months after the Sale Order. This is not successor liability. It is a straightforward breach-of-contract and estoppel claim based on New Converge's own acts. The relevant facts are undisputed. New Converge (1) retained Mr. Rosenthal in July 2024 to negotiate Newman's claims for DeMayo Law (Doc. No. 60 ¶¶ 32–36); (2) hired Kelley Drye & Warren LLP to serve as DeMayo Law's trial counsel (*id.* ¶¶ 55–56); (3) had Kelley Drye appear for DeMayo Law, move to dismiss in part, and file a reply on DeMayo Law's behalf (*id.* ¶¶ 57–59); (4) sent a proposed indemnity agreement expressly stating that New Converge had "stepped into Lacuna's rights and obligations" under the MSA[7] (*id.* ¶¶ 64–68); (5) sought and received privileged information from DeMayo Law (*id.* ¶¶ 60, 63, 92); and (6) waited more than ten months before saying that it owed DeMayo Law no duty to defend or indemnify (*id.* ¶¶ 43, 47, 62, 89, 113). Those acts created a new, stand-alone duty through conduct, performance, and an express written statement. *Id.* ¶¶ 86–

---

[7]New Converge calls the proposed indemnity agreement "unexecuted" and nonbinding. (Doc. No. 61, p. 3.) But that argument ignores the extensive conduct that came before and accompanied the written agreement—conduct that, under North Carolina law, creates a binding duty on its own. The proposal is relevant because it memorialized a duty New Converge had performed for months and contained a factual statement that New Converge had in fact taken on the obligation to indemnify DeMayo Law — an admission of a party-opponent. *(Doc. No.* 60 ¶¶ 88–94.)

97. The fact that Old Converge's services first gave rise to Newman's claims does not turn DeMayo Law's crossclaims into pre-bankruptcy claims against Old Converge.

In sum, DeMayo Law's crossclaims arise only from New Converge's post-Sale Order conduct.

### b. DeMayo Law's Crossclaims Plainly and Specifically Allege a Valid North Carolina Agreement Based Only on New Converge's Post-Sale Conduct.

The bases of New Converge's Motion rely on its assertion that DeMayo Law's crossclaims seek indemnity based on Old Converge's contract. That is wrong. It also ignores DeMayo Law's express allegations. At the start of its "Summary of Cross Claims," DeMayo Law wrote:

> To be clear, DeMayo Law does not contend that New Converge is obligated because Lacuna/Old Converge entered into a contract with DeMayo Law, or that New Converge is obligated in any way on Lacuna/Old Converge's liabilities or obligations. In June 2024, when Newman renewed his claims, New Converge was free to inform DeMayo Law that it owed no indemnity obligations . . . and that DeMayo Law would need to deal with the Plaintiff directly and on his own. New Converge did not do that. To the contrary, it did just the opposite, establishing a new contractual relationship with DeMayo Law . . . .

(Doc. No. 60 at p. 20.)

Under North Carolina law, the parties' acts may imply a contract-in-fact. *Revels v. Miss Am. Org.*, 182 N.C. App. 334, 337, 641 S.E.2d 721, 724 (2007). North Carolina law does not require a written contract; an oral agreement binds the parties when it meets the elements of a contract. *Id.*; *see, e.g.*, *Whitley v. O'Neal*, 5 N.C. App. 136, 140, 168 S.E.2d 6, 9 (1969). DeMayo Law alleges just that kind of contract. Beginning in June 2024, after Newman responded to Old Converge's open settlement offer from the prior year, New Converge retained counsel to negotiate with Newman on DeMayo Law's behalf. New Converge's counsel sought DeMayo Law's privileged information and views, controlled the talks, and represented that New Converge would indemnify DeMayo Law. Later, in litigation, New Converge retained new counsel to represent DeMayo Law,

filed pleadings on DeMayo Law's behalf, and proposed a modification designed to limit New Converge's indemnity exposure. Those acts both create and are evidence of a valid agreement. DeMayo Law relied on those acts and statements. It shared confidential information with New Converge, did not retain its own counsel to negotiate with Newman, did not try to control the talks, and allowed New Converge's counsel to make litigation strategy calls. From June 19, 2024, to April 29, 2025, New Converge never claimed that it was not indemnifying DeMayo Law or that it had no duty to do so.[8]

DeMayo Law changed its position in reliance on New Converge's agreement-in-fact to indemnify it. New Converge, in turn, had a strong incentive to make that agreement: it wanted to win back a lucrative Old Converge client that had paid millions for its services. In doing so, DeMayo Law and New Converge used the Old Converge MSA's indemnity terms to define New Converge's new agreement-in-fact. Indeed, New Converge's April 2025 proposed agreement confirms that point. Through that proposal, New Converge tried to limit those obligations. But New Converge's counsel expressly represented that New Converge's indemnity obligation was the same as the obligation set out in the MSA. Thus, consideration supports the agreement. Its terms are specific enough, and New Converge's own post-Sale Order acts show that it chose to indemnify DeMayo Law for Newman's claims.

A party may freely take on another entity's duties and thereby create a new, stand-alone duty. *See Carter Enters., Inc. v. Ashland Specialty Co., Inc.*, 257 B.R. 797, 803 (S.D. W. Va. 2001)

---

[8]The agreement between DeMayo Law and New Converge is a North Carolina contract. By changing its position in reliance on New Converge's promise to indemnify it against Newman's claims, DeMayo Law accepted the offer in North Carolina. This was the last act necessary for the formation of the contract, so North Carolina law governs the implied-in-fact agreement. *See EKG Sec., Inc. v. Tailormade Protective Servs., LLC*, No. 3:21-CV-00599-RJC-DCK, 2022 WL 4477713, at *3 (W.D.N.C. Sept. 26, 2022) (citing *Century Data Sys., Inc. v. McDonald*, 428 S.E.2d 190, 193–94 (N.C. Ct. App. 1993)).

(recognizing that a successor entity may freely assume an otherwise discharged duty outside bankruptcy). And New Converge had good business reasons to do so. DeMayo Law had paid Old Converge about $4.78 million under the MSA. (Doc. No. 60 ¶ 46.) New Converge acquired Old Converge's business and client relationships. (*Id.* ¶ 28.) New Converge had an obvious interest in obtaining DeMayo Law as a client and honored the MSA's indemnity duty to seek its business. *Id.* ¶ 46. Counsel for New Converge has conceded as much. (Doc. No. 61-2 at p. 3.)

DeMayo Law does not seek to pin Old Converge's liabilities on New Converge. Rather, DeMayo Law seeks to hold New Converge to obligations it freely took on through its own post-sale conduct. The Sale Order's "free and clear" language shields New Converge from Old Converge's creditors. It does not let New Converge make promises, induce reliance, and then invoke the Sale Order when convenient. New Converge's own cited case in its correspondence proves the point. In *In re Motors Liquidation Co.*, the Bankruptcy Court for the Southern District of New York first held that the Sale Order barred claims based on New GM's pre-sale conduct. 2012 WL 1339496 (Bankr. S.D.N.Y. 2012). But in a *later* ruling, the District Court held that "truly independent claims" based solely on the purchaser's own post-closing conduct are not barred by a "free and clear" sale order. *See In re Motors Liquidation Co.*, 590 B.R. 39, 60-61 (S.D.N.Y. 2018).

The line is clear: a sale approved as "free and clear" in bankruptcy protects the buyer from the seller's prior debts; it does not shield the buyer from obligations it takes on after the sale. New Converge's post-sale promises to DeMayo Law—backed by more than ten months of performance—fall outside any bankruptcy sale order.

16

       *c.*   *This Court Has Jurisdiction Over DeMayo Law's Post-Sale Contract and Estoppel Claims.*

New Converge next suggests that the Bankruptcy Court retained "exclusive jurisdiction" under the Sale Order, so DeMayo Law must litigate its claims in bankruptcy court. (Doc. No. 61 at p. 3; Doc. No. 61-2 at pp. 4-5; *see also* Doc. No. 60 ¶ 75.) That is wrong for two reasons.

First, the Bankruptcy Court retained jurisdiction to "interpret, implement and enforce the terms and provisions of the [Sale Order] and the Stalking Horse APA." (Doc. No. 61-4 ¶ 44.) If DeMayo Law's crossclaims turned on the Sale Order or APA, the Bankruptcy Court would have jurisdiction over them. But they do not. DeMayo Law's claims arise from a new post-sale agreement under North Carolina law. The question is whether New Converge bound itself to defend and indemnify DeMayo Law through its conduct from June 2024 through April 2025. State contract law—not bankruptcy law or the Sale Order—answers that question. DeMayo Law pleaded sufficient post-Sale Order conduct to establish a binding oral agreement under North Carolina law. (*See, e.g.*, Doc. No. 60 ¶¶ 102-109.)

Second, this Court has subject-matter jurisdiction over DeMayo Law's crossclaims. The underlying action arises under federal law, and 28 U.S.C. § 1367 gives this Court supplemental jurisdiction over DeMayo Law's Rule 13(g) crossclaims. So, no jurisdictional defect exists. And, New Converge's reliance in its correspondence on *In re Merry-Go-Round Enters., Inc.*, 400 F.3d 219, 227 (4th Cir. 2005), misses the mark. That case asked whether a bankruptcy court could interpret its own prior orders. It did not ask whether an Article III court may hear a state-law contract claim involving an entity that once took part in a bankruptcy case.

In short, DeMayo Law's crossclaims do not require the Court to interpret the Sale Order. They require the Court to apply North Carolina law. This Court—not a bankruptcy court in New York—should do that.

III. <u>Rule 12(b)(4) Does Not Support Dismissal.</u>

Rule 12(b)(4) is narrow. It addresses defects in the form of process, not venue, successor liability, or a bankruptcy-sale defense. Fed. R. Civ. P. 12(b)(4); Fed. R. Civ. P. 4(a). New Converge's Motion says only that the caption's "f/k/a" phrase is wrong and that the claims belong in bankruptcy court. But neither is a Rule 12(b)(4) defect.

That threshold problem is dispositive. A Rule 12(b)(4) movant must point to something wrong with the process itself, and New Converge has not done so. The summons and pleadings named "Converge Marketing, LLC"—New Converge's correct name—and New Converge voluntarily accepted service as Converge Marketing, LLC and "waive[ed] any objections to . . . service." (Doc. No. 49.) Having accepted service and waived service objections, New Converge cannot use an unexplained Rule 12(b)(4) citation to unwind that waiver. *See Koehler v. Dodwell*, 152 F.3d 304, 306 (4th Cir. 1998) ("<u>Absent waiver or consent,</u> a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant.") (emphasis added).

Nor does the "f/k/a" phrase alter the result. New Converge appears to suggest that the caption misnames it by adding "f/k/a Converge Direct, LLC" after its correct legal name.[9] At most, that is a misnomer and "service of process is not legally defective simply because the complaint misnames the defendant in some insignificant way." *Morrel v. Nationwide Mut. Fire Ins. Co.*, 188 F.3d 218, 224 (4th Cir. 1999); *see also Miller v. Charlotte Mecklenburg Schs.*, No. 3:24-CV-00511-FDW-DCK, 2024 WL 4354716, at *3 (W.D.N.C. Sept. 30, 2024). The Fourth Circuit has long rejected technical caption objections where the pleading names the defendant "in such terms

---

[9]Because New Converge did not brief this issue, it fails to articulate a Rule 12(b)(4) theory or cite authority supporting dismissal.

that every intelligent person understands who is meant." *United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 873 (4th Cir. 1947) (internal citations and quotations omitted). That is this case. New Converge understood it was named as a defendant, accepted service, answered, and filed the present Motion on its own behalf. The pleadings—the Amended Complaint and DeMayo Law's crossclaims—also make clear that New Converge and Old Converge are separate entities.

At most, if the Court found a technical caption defect, the proper response would be amendment under Rule 4(a)(2), not dismissal. Fed. R. Civ. P. 4(a)(2). Dismissal would make no sense where the correct entity received notice, appeared, and suffered no prejudice from the "f/k/a" phrase. The Court should deny the Motion to Dismiss to the extent it relies on Rule 12(b)(4).

IV. <u>New Converge Waived All Venue Objections, and Transfer Is Not Warranted.</u>

While failing to identify any defect in either this Court's jurisdiction or the process in this case, New Converge does attempt to argue that venue is improper. That argument fails twice over. First, New Converge never cited or moved under Rule 12(b)(3), so it waived that defense. Fed. R. Civ. P. 12(h)(1)(A), (B). Rule 12(h) prevents exactly this sort of shifting procedural attack: a defendant must raise improper venue in its first Rule 12 motion or responsive pleading, not after appearing and litigating. Second, before moving to dismiss, New Converge answered the Amended Complaint and asserted twenty-five defenses. (Doc. Nos. 47, 51.) None contested venue. By failing to raise venue as to the Amended Complaint, New Converge conceded that this Court is a proper venue for Newman's claims against it. If venue is proper on the Amended Complaint, DeMayo Law's related indemnity claim arising out of those claims also belongs here.

New Converge has also failed to justify transfer to the Bankruptcy Court under 28 U.S.C. §§ 157, 1404, or 1406. The statutes New Converge invokes do not fit its request. Section 1406 applies only when a case was filed in the wrong district and needs a transfer to cure improper

venue. *Leonard*, 718 F. Supp. 2d at 743–44; *Nichols*, 991 F.2d at 1201 n.4. That is not this case because venue is proper and, in any event, New Converge waived any venue objection. Section 1404(a) presupposes a proper venue but requires a showing that convenience and the interests of justice favor transfer. New Converge offers no witness list, no affidavit, no forum-specific inconvenience, and no explanation why the parties, witnesses, records, or claims would be better served in New York. Its desire to avoid litigating in this forum is not enough. Section 157 fares no better. It does not independently authorize this Court to transfer this TCPA action and DeMayo Law's state-law crossclaims directly to a bankruptcy court in another district.

The substance of DeMayo Law's crossclaims confirms why transfer is unwarranted. New Converge insists that the claims arise from pre-bankruptcy conduct and therefore belong before the Bankruptcy Court. But DeMayo Law's crossclaims do not seek relief from Old Converge, do not ask to enforce Old Converge's discharged duties, and do not require the Court to administer Old Converge's estate. They ask this Court to decide whether New Converge, through its own post-sale conduct, formed and then breached a new agreement to defend and indemnify DeMayo Law. That question turns on New Converge's June 2024 through April 2025 conduct and ordinary contract and estoppel principles. It does not require transfer to New York.

Nor does Newman's separate successor-liability theory justify transferring DeMayo Law's crossclaims. New Converge suggests that because Newman pleads successor liability against New Converge, Newman's claim must proceed in the Bankruptcy Court against Old Converge—and DeMayo Law's claims based on New Converge's acts must go there too. (Doc. No. 61, p. 3.) But a party may choose to take on another entity's duties, even if that entity is bankrupt, and in doing so thereby form a new, stand-alone duty. *See Carter Enters., Inc. v. Ashland Specialty Co., Inc.*, 257 B.R. 797, 803 (S.D. W. Va. 2001). New Converge did exactly that: it retained counsel,

controlled settlement efforts, solicited privileged information, and appeared through counsel for DeMayo Law. By negotiating with Newman without disclosing that New Converge controlled the matter, New Converge assumed responsibility for the claim it chose to negotiate and control. These allegations can be adjudicated here without imposing Old Converge's liabilities on New Converge.

Transfer also would not serve judicial economy. This Court already has jurisdiction over Plaintiff's TCPA claims, DeMayo Law's related crossclaims, and the parties who allegedly participated in the defense and settlement course of dealing. Splitting the dispute between this Court and a New York bankruptcy court would invite delay, duplication, and inconsistent factual findings about the same alleged calls, defense strategy, and post-sale course of conduct. The more efficient course is to keep the related claims together in the forum where the action is pending and where New Converge has appeared.

V.    New Converge's Rule 19 Argument Fails Because Old Converge Is Not a Necessary Party.

Lastly, New Converge "reserves" the right to argue that the bankruptcy stay prevents joinder of Old Converge, a necessary party, so the Court must dismiss DeMayo Law's claims. (Doc. No. 61, p. 3 n.6.) Because New Converge only "reserves" the right to make this argument, the issue is not properly before the Court. Still, New Converge is wrong.

Rule 19(a) defines when a party is "necessary." *Travelers Commercial Ins. Co. v. Jester*, No. 5:22-CV-00040-KDB-DSC, 2022 WL 17751426, at *3 (W.D.N.C. Dec. 19, 2022). A party is necessary when the court cannot grant full relief among existing parties without it. Fed. R. Civ. P. 19(a)(1)(A). A party is also necessary if it "claims an interest relating to the subject of the action" and a case resolved without it could "impair or impede" that party's ability to protect the interest or "leave an existing party subject to a substantial risk of incurring" inconsistent duties. Fed. R. Civ. P. 19(a)(1)(B). A party is necessary if it meets either Rule 19(a)(1)(A) or Rule 19(a)(1)(B).

21

*See Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 434 (4th Cir. 2014); *Hiscox Dedicated Corporate Member, Ltd. v. Feld Entm't, Inc*., 580 F. Supp. 3d 206, 211 (E.D. Va. 2022). Old Converge meets neither test.

DeMayo Law's crossclaims allege that New Converge—not Old Converge—breached a post-sale obligation to defend and indemnify DeMayo Law. (Doc. No. 60 ¶¶ 102–109.) The contract at issue is between New Converge and DeMayo Law. Old Converge is not a party to that agreement and has no interest in the outcome. The Court can grant full relief between the existing parties. If New Converge breached its obligation, the Court can order New Converge to honor it. Old Converge need not participate. Nor would this case risk inconsistent obligations for New Converge. DeMayo Law does not seek to hold both Old Converge and New Converge liable on the same duty. It seeks to hold New Converge liable for New Converge's own promise.

## CONCLUSION

For these reasons, DeMayo Law Offices, LLP respectfully asks the Court to deny New Converge's Motion to Dismiss or, in the Alternative, Transfer to Bankruptcy Court in full.

Respectfully submitted,

WOMBLE BOND DICKINSON (US) LLP

*/s/ James P. Cooney III*
James P. Cooney III (N.C. Bar No. 12140)
Emmett J. Whelan (N.C. Bar No. 58139)
301 South College Street, Suite 3500
Charlotte, North Carolina 28202
Telephone: (704) 331-4980
Email: Jim.Cooney@wbd-us.com
Email: Emmett.Whelan@wbd-us.com

R. Travis Campbell (C.A. No. 271580)
50 California Street, Suite 2750
San Francisco, CA 94111
Telephone: (415) 433-1900
Email: travis.campbell@wbd-us.com

*Counsel for Defendant/Crossclaim Plaintiff*
*DeMayo Law Offices, LLP*

23

# AI CERTIFICATION

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his direction as to the accuracy of the proposition for which it is offered, and

the citation to authority provided.

This 15th day of July 2026.

*//s/ James P. Cooney III*
James P. Cooney III