-----------------------------------------------------------

| | |
|---|---|
| WESLEY NEWMAN, on behalf of itself and all others similarly situated, | NO. 3:25-CV-00042-KDB-SCR |
| Plaintiff, | **REPLY TO PLAINTIFF WESLEY NEWMAN'S OPPOSITION AND DEFENDANT DEMAYO LAW OFFICES, LLP'S RESPONSE IN OPPOSITION TO CONVERGE MARKETING, LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER TO BANKRUPTCY COURT** |
| v. | |
| DEMAYO LAW OFFICES, LLP, CONVERGE MARKETING, LLC F/K/A CONVERGE DIRECT, LLC and SGMS INC. D/B/A LEGAL CONVERSION CENTER, | |
| Defendants. | **CLASS ACTION** |

-----------------------------------------------------------

New Converge[1] respectfully submits this reply memorandum of law in further support of its motion to dismiss the claims against New Converge in the Amended Complaint of Plaintiff and the Cross Claims of DeMayo.

## INTRODUCTION

Plaintiff has dressed up a low-value claim in the wrong venue as a class action and now maintains that forcing him to litigate in the Bankruptcy Court – the only court with jurisdiction to hear claims arising out of pre-bankruptcy conduct against New Converge – would somehow violate his constitutional rights. The Bankruptcy Code's procedures afford due process to purported known creditors claiming that they should have received individualized notice of any given bankruptcy before the bar date. This situation is a routine matter. The Bankruptcy Court has exclusive jurisdiction to rule upon how Plaintiff's claim intersects with New Converge's

---

[1] Unless otherwise indicated, the defined terms contained herein shall have the same meaning as those in New Converge's opening motion (ECF Doc. No. 61).

property rights in the assets it purchased "free and clear" under the Sale Order. That is a more complex, specialized matter for only the Bankruptcy Court. Moreover, the bankruptcy is still pending, which simplifies matters further.[2]

DeMayo, a class action firm doing enough business to support an advertising budget over $4 million, made a rational choice not to expend resources in the Bankruptcy Court to file a claim before the bar date. DeMayo made another rational choice to accept New Converge's limited offer to pay the highly respected firm of Kelley Drye & Warren LLP ("KDW") to represent it in papering a low-cost settlement with Plaintiff. That settlement never came to fruition because DeMayo also impulsively chose to publicly insult Plaintiff on the Better Business Bureau website. Plaintiff then filed a purported class action.

DeMayo now seeks to stick New Converge with the bill for the skyrocketing costs arising out of its own folly. New Converge never agreed to this in words or deeds. Furthermore, DeMayo's claim seeks indemnification for its potential liability (and legal fees and costs) for a purported TCPA violation by a subcontractor on its pre-bankruptcy ad campaign. DeMayo's claim is barred by the Sale Order, a decision the Bankruptcy Court has exclusive jurisdiction to make.

The Court should dismiss the claims against New Converge. If Plaintiff and DeMayo wish to pursue them despite their lack of merit, they are free to do so in the first instance only in the Bankruptcy Court. Alternatively, the Court may transfer these claims, but it may not hear them without violating the Sale Order.

## ARGUMENT

### POINT I

**WHETHER PLAINTIFF WAS A KNOWN CREDITOR IS IRRELEVANT TO THE**

---

[2] The automatic stay under 28 U.S.C. § 362 also remains in effect.

## JURISDICTIONAL ISSUE BEFORE THE COURT TODAY

There is no dispute that Plaintiff, who had no privity of contract with Old Converge, was not listed as a known creditor to receive individualized notice of Old Converge's bankruptcy. Whether he should have been is disputed, but it is undeniable that he has notice of the pending bankruptcy now. If he wishes to pursue his claim against New Converge, he must do so in the Bankruptcy Court. If Plaintiff qualifies as a known creditor entitled to relief from the bar date, the Bankruptcy Court can provide him relief in accordance with the Bankruptcy Code and treat him like all other known creditors of Old Converge.

Whether Plaintiff's claim premised "on a theory of successor liability" (*see* Amended Complaint ¶ 81) or on any other theory can proceed against New Converge hinges entirely upon the "free and clear" provisions in the Sale Order. Only the Bankruptcy Court has jurisdiction to interpret the Sale Order. *See* Sales Order ¶ 44 (providing for "exclusive jurisdiction" in the Bankruptcy Court to interpret the Sales Order). Accordingly, this Court lacks subject matter jurisdiction over Plaintiff's claims against New Converge under Rule 12(b)(1), Fed. R. Civ. P.

And the same is true of DeMayo's claims. DeMayo seeks indemnification for its own liability and expenses arising out of a seeming misstep of a subcontractor that worked on its $4 million plus ad campaign. Ad campaigns pose risk under the TCPA for all involved. Old Converge's contracts normally would provide for indemnification of a customer in the event that a TCPA violation occurred on its watch. Unfortunately, after the ad campaign, Old Converge had no choice but to enter bankruptcy. Bankruptcy is a routine risk not only in the online marketing industry, but in any industry. DeMayo took the benefits of an ad campaign in the form of Camp LeJeune clients, but it, unfortunately, must also accept the risk that its contractual counterpart entered bankruptcy. So states the TCPA. This is hardly news to DeMayo.

3

Because liability for New Converge to either Plaintiff or DeMayo arises directly out of a pre-bankruptcy TCPA violation, only the Bankruptcy Court may hear the claims, counterclaims and/or crossclaims asserted against New Converge in this case.

**POINT II**

**NEW CONVERGE NEVER AGREED TO UNLIMITED INDEMNIFICATION AND DEMAYO IS TO BLAME FOR ITS PREDICAMENT**

The fact that the parties could not reduce terms of an agreement to a writing that they would both execute demonstrates that there was no meeting of the minds between the parties beyond the initial attorney's fees that New Converge actually did pay. Pre-litigation, New Converge, hoping to make its old customer happy to rekindle the business relationship was willing to cover a small cost to negotiate an anticipated $3,000 settlement. That did not give rise to liability. Attempting to cast the new entity's business decision to cancel any voluntarily undertaken business arrangement as anything other than an attempt to impose liability for the underlying, pre-bankruptcy conduct fails as a matter of law. *See, e.g., In re Motors Liquidation Co. v. Castillo*, Bank. No. 09-50026, Adv. No. 09-00509, 2012 WL 1339496 (April 17, 2012).

Even after DeMayo impulsively fanned the flames with Plaintiff, which led to Plaintiff filing purported class action litigation, New Converge attempted to reach a reasonable agreement with DeMayo suited to the far more complex situation DeMayo had ignited. New Converge was willing to agree to the limited terms in the proposed written agreement attached to Exhibit 8 of the Kreder Declaration (ECF No. 61). A "Whereas" clause denies that New Converge has a legal obligation to indemnify DeMayo. Paragraph 1 intends for New Converge to cover the costs of its chosen counsel through "the initial pleading stage." Paragraph 2 provides that New Converge would do so only so long as the parties' interests remain aligned. Paragraph 3 (emphasis added) provides that the parties would "***discuss a reasonable allocation*** of [any

4

further] defense costs" and "payment obligations for any settlement or judgment," while Paragraph 7 provides that they would "confer in good faith" about the same. Paragraph 7 provides that New Converge's decision to assume the defense through the Pleading Stage in the Action does not constitute an admission that [New] Converge is responsible for any payment of a settlement or judgment …" And Paragraph 4 states that "Converge shall have no indemnification or other obligations under this Agreement with respect to … (e) damages, liabilities, losses, settlements, judgments, costs and expenses (including but not limited to reasonable attorneys' fees and costs) incurred solely as a result of DeMayo's … conduct." Most importantly, Paragraph 7 provides that New Converge "exclusively retains the right to decide, in its sole and absolute discretion, and when its interests may diverge from that of DeMayo and/or LCC" and that it would not be liable for any other counsel that DeMayo chose to retain. In short, even had this larger agreement been reached, New Converge fulfilled its voluntary obligation to DeMayo and disengaged in accordance with its limited nature when DeMayo ruined the chances of a low-cost settlement and refused to accept the consequences of publicly shaming Plaintiff.

Still trying to avoid the fire it stoked, DeMayo is now claiming that New Converge is obligated to pay for all of its defense and the entirety of any settlement or judgment no matter the cost. No post-bankruptcy entity would make the business agreement to assume such liability. DeMayo's position is absurd – New Converge never signed a blank check.

DeMayo cites no case that supports its untenable position that an implied contract for indemnification arose out of New Converge's conduct and that "its terms are specific enough." *See* DeMayo Brief at page 14. *Whitley v. O'Neal*, 5 N.C. App. 136, 168 S.E.2d 6 (1969), involved a simple agreement for a 50/50 split of proceeds from a sale of a portion of real property with an allocation of value for a retained property interest. The Court of Appeals

remanded the case for a new trial because recovery was possible on a contract theory, which the lower court had nonsuited prior to trial limited to a fraud theory. *Whitley* does not support finding an implied contract for indemnification for an unlimited amount based upon any words or deeds that DeMayo alleges New Converge (or KDW) stated or undertook.

Nor does *McDonald v. Scarboro*, 91 N.C.App. 13 (1988), which involved a company hiring an employee and promising to cover his attorney's fees if and when his former employer sued him for misappropriating trade secrets and related claims. The new employer presumably benefitted from the employee's valuable knowledge (putting aside whether such knowledge constituted trade secrets or not) and the employee would not have accepted the job without that promise. Nothing of the sort is at stake here – New Converge hoped that voluntarily resolving Plaintiff's small claim would lead to new business with DeMayo, but it did not. No one lured DeMayo into conduct risking new liability post-bankruptcy. DeMayo suffered no new harm. Neither New Converge nor DeMayo was obligated to continue working together in advertising or in resolving the litigation with Plaintiff – and neither did continue.

Nor does the GM bankruptcy litigation help DeMayo. At issue in *In Re: Motors Liquidation Co.*, 590 B.R. 39 (2018), was whether plaintiffs could sue New GM for a duty to warn customers about the danger posed by an ignition switch defect about which it had knowledge since the bankruptcy before it resulted in more deaths post-bankruptcy. The Southern District of New York characterized Bankruptcy Judge Robert E. Gerber's ruling upon whether the claims could proceed as follows:

> The question he sought to answer, however, was whether Plaintiffs' claims were truly Independent Claims, in which case they could proceed, or rather "successor liability claim[s] 'dressed up to look like something else,'" in which case they could not. He clearly had jurisdiction to answer that question and, after concluding that the claims were actually successor liability claims, to enjoin them—as those tasks involved interpreting and enforcing the Sale Order.

*Id.* at 60-61 (internal citation omitted).

The Southern District of New York expressly stated that it was not reaching the question whether the plaintiffs' legal theory was valid – only the propriety of Judge Gerber's ruling ***in the bankruptcy court*** as to whether the claims could proceed at all ***under the sale order*** (which he then enjoined). That is exactly the path that New Converge requests in its motion. Like Judge Gerber, the Bankruptcy Court "clearly ha[s] jurisdiction to answer [the] question" whether DeMayo's claims truly arise out of post-bankruptcy conduct such that they may proceed – or not, in which case the Bankruptcy Court will enjoin them from proceeding further in any forum, *i.e.,* enforce the Sale Order.

In any event, DeMayo cannot support its argument that it reasonably relied to its detriment in any way upon New Converge's initial willingness to cover the legal costs to attempt to negotiate a quick, nuisance value settlement. DeMayo benefitted from it – until it impulsively rendered settlement with Plaintiff on reasonable terms impossible by insulting him publicly on the Better Business Bureau website. DeMayo is responsible for its own predicament.

DeMayo also claims that it unjustly changed its position by not hiring separate counsel and sharing confidential information (which is protected by the joint defense privilege). DeMayo is a sophisticated law firm and suffered no harm by not paying for separate counsel before it caused New Converge's interests to diverge from its own. It was competently represented at all times in negotiations and litigation with Plaintiff. DeMayo made a business decision in working with KDW, as well as in its prior, unrelated, cost-benefit analysis not to file a claim in the bankruptcy. DeMayo was a known creditor that received individualized notice of the bar date. New Converge bears no legal responsibility to DeMayo for these choices it made.

The bottom line is that DeMayo frustrated the purpose of the limited agreement, a

voluntary gift, when it fanned the flames by publicly insulting Plaintiff and made absurd demands of New Converge. Had DeMayo not made such bad choices, New Converge was willing to consider in good faith sharing the reasonable costs of settling with Plaintiff for the amount on the table during the negotiations at that time. New Converge was willing to continue negotiating the limited terms in the proposed, unsigned written agreement attached to Exhibit 8 of the Kreder Declaration (ECF No. 61). DeMayo rejected New Converge's limited offer. New Converge is not liable to DeMayo for the costs of this spiraling purported class action – and never agreed to be. Now, after forcing New Converge to incur the costs of defending itself in this Court, DeMayo must face those costs alone.

## POINT III

## <u>COST-SAVING MEASURES OUGHT TO BE ENCOURAGED</u>

Plaintiff and DeMayo make much of form over substance.[3] New Converge has made the least expensive motion to dismiss on jurisdictional grounds that it could (without waiving the right to make further motions to dismiss on other grounds should that prove necessary) and asked the Court to accept the few pages of correspondence in lieu of a formal brief to spare a small post-bankruptcy entity as much in unnecessary legal costs as possible. A motion is not even necessary for the Court to dismiss the claims against New Converge. "The courts, even this Court, have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y. & H. Corp.*, 546 U.S. 500, 501 (2006), *citing Ruhrgas AG v. Marathon Oil. Co.*, 526 U.S. 574, 583 (1999). Further, Rule 12(h)(3), Fed.R.Civ.P. provides: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

---

[3] New Converge also notes that Plaintiff filed his brief after the Court-imposed deadline without the Court having so ordered the parties' stipulation to extend the deadline at his request.

The Amended Complaint overreaches in attempting to bypass the Bankruptcy Code's protections afforded to New Converge. Plaintiff is costing the investors in New Converge, who purchased "free and clear" assets, more to defend New Converge on jurisdictional grounds than the actual value of his TCPA claim.

DeMayo's pursuit of indemnification claims against New Converge arising directly out of a subcontractor's alleged pre-bankruptcy TCPA violations is more of the same. New Converge's post-bankruptcy attempt to make its former customer happy despite the lack of any legal obligation to do so gave rise to no claim. DeMayo has suffered absolutely no harm from New Converge's attempt to resolve the dispute with Plaintiff – DeMayo benefitted until it impulsively shot itself in the foot. DeMayo, a sophisticated law firm, was free at all times to file a claim in the Bankruptcy Court before the bar date and/or hire independent counsel before it rendered a reasonable settlement with Plaintiff impossible.

It seems likely that both Plaintiff and DeMayo overlooked the impact of the bankruptcy on Plaintiff's ability to represent a class – thereby vastly overvaluing his claims. There are no other known creditor TCPA plaintiffs, as Plaintiff alleges himself to be (and his pursuit of successor liability claims is barred by the Sale Order). Unknown TCPA plaintiffs – to the extent there are any – were entitled only to publication notice of the bar date. Their claims, no matter their underlying legal theory, are now barred and valueless. This obvious confusion on the part of Plaintiff and DeMayo exemplifies why the Bankruptcy Court is in the best position to interpret how the Sale Order applies to claims against New Converge. Frankly, while Plaintiff and DeMayo are free to pursue their claims against New Converge in the Bankruptcy Court, neither is likely to do so once they must play by the same rules as all other creditors of Old Converge.

And that is exactly as it should be.  The claims in this case against New Converge do nothing except put unjust settlement pressure on a post-bankruptcy company attempting to rebuild itself.  New Converge needs no motivation from this improper litigation to follow best practices to ensure that no subcontractor violates the TCPA on its customers' ad campaigns – its survival depends upon doing so.  New Converge had originally suggested the alternative of a transfer (perhaps pursuant to 28 U.S.C. §§ 1404, 1406 and/or 157 (providing for transfer only to "bankruptcy judges for the district.")).  Neither Plaintiff nor DeMayo, the parties who would benefit from a transfer instead of a dismissal, addressed these issues meaningfully.  Rule 12(h)(3) states that the Court shall "dismiss" the action.  28 U.S.C. § 1631 allows the Court to transfer such a case only if doing so "is in the interest of justice."  The interest of justice would not be served by transferring barred, frivolous claims on behalf of parties who did not bother to present the Court with an appropriate mechanism to do so.  Accordingly, the Court should dismiss all claims against New Converge.

## CONCLUSION

For all the foregoing reasons, and those stated in New Converge's motion and exhibits, this Court should grant New Converge's requested relief and such other and further relief as the Court deems just and proper.

Respectfully submitted this the 14th day of August 2026.

/s/ S. Frederick Winiker, III
S. Frederick Winiker, III
Flannery | Georgalis LLC
NC State Bar No. 22390
227 W. Trade Street, Suite 950
Charlotte, NC  28202
(704) 333.8440
rwiniker@flannerygeorgalis.com

10

**ROTTENBERG LIPMAN RICH, P.C.**
Steven Kayman (*pro hac vice*)
Jennifer A. Kreder (*pro hac vice*)
230 Park Ave., 18th Floor
New York, NY 10169
Tel: (212) 661-3080
skayman@rlrpclaw.com
jkreder@rlrpclaw.com

*Counsel for Defendant Converge Marketing, LLC*

11