IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:25-CV-00042-KDB-MTO

| | |
|---|---|
| **WESLEY NEWMAN,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CONVERGE MARKETING, LLC ET AL.,**<br><br>**Defendants.** | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Defendant Converge Marketing, LLC's ("New Converge") Motion to Dismiss or, in the Alternative, Transfer to Bankruptcy Court (the "Motion") (Doc. No. 61). The Court has carefully considered the Motion, the Parties' briefs and exhibits, and the relevant bankruptcy filings. For the reasons discussed below, the Court will **GRANT in part and DENY in part** the Motion.

## I. LEGAL STANDARD

### A. Motion to Dismiss

#### 1. Subject Matter Jurisdiction

A motion to dismiss based on Federal Rule of Civil Procedure 12(b)(1) addresses whether the court has subject-matter jurisdiction to hear the dispute, *see* Fed. R. Civ. P. 12(b)(1), and Plaintiff bears the burden of proving that subject matter jurisdiction exists. *See Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "[F]ederal courts are courts of limited jurisdiction, constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir.

1998) (quotation omitted); *see Gunn v. Minton*, 568 U.S. 251, 256 (2013); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). There is no presumption that a federal court has subject-matter jurisdiction. *See Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). However, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). Further, to determine whether subject matter jurisdiction is proper, the Court may consider evidence beyond the pleadings. *See Evans*, 166 F.3d at 647.

### 2. Insufficient Process

A motion to dismiss under Rule 12(b)(4) challenges the sufficiency or form of the process itself, while a motion to dismiss under Rule 12(b)(5) challenges the sufficiency of the act of service of process. *See* Fed. R. Civ. P. 12(b)(4), (b)(5). In essence, a Rule 12(b)(4) motion to dismiss objects to a defect in the content of the documents served, while a Rule 12(b)(5) motion to dismiss objects to a defect in the act (or lack) of delivery. *See, e.g.*, 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed. 2004).

Once the sufficiency of process or service of process is challenged by a motion to dismiss, Plaintiff bears the burden of establishing process was sufficient and service of process was effectuated in accordance with Rule 4 of the Federal Rules of Civil Procedure. *Scott v. Md. State Dep't of Labor*, 673 F.App'x 299, 304 (4th Cir. 2016) (per curiam) (internal citation omitted); *Elkins v. Broome*, 213 F.R.D. 273, 276 (M.D.N.C. 2003).

## B. Motion to Transfer

Venue is proper either in "(1) a judicial district in which any defendant resides, if all defendants are residents of the same State in which the district is located; [or] (2) a judicial district

in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. §§ 1391(b)(1), (2). "[I]n determining whether events or omissions are sufficiently substantial to support venue . . . a court should not focus only on those matters that are in dispute or that directly led to the filing of the action . . . [but also on] the entire sequences of events underlying the claim." *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004). "It is possible for venue to be proper in more than one judicial district," *id.*; however, a case cannot proceed in an improper district. *See N. Carolina All. for Retired Americans v. Hirsch*, No. 1:23-CV-837, 2024 WL 5695635, at *2-3 (M.D.N.C. May 16, 2024).

## II. FACTS AND PROCEDURAL HISTORY

### A. The Parties

Plaintiff Wesley Newman ("Newman") alleges that Defendants DeMayo Law Offices, LLP ("DeMayo"), SGMS, Inc., d/b/a Legal Conversion Center ("LLC"), and New Converge (collectively, "Defendants") violated provisions of the Telephone Consumer Protection Act ("TCPA") by sending multiple telemarking calls (i.e., "robocalls") to Plaintiff and others[1] listed on the National Do Not Call Registry without their written consent.[2]

Defendant DeMayo is a law firm headquartered in Charlotte. As part of an advertising campaign, DeMayo initially contracted non-party Lacuna Ventures, LLC to make the advertising

---

[1] The calls were made to potential class members concerning the class action to recover from an incident at Marine Base Camp Lejeune under the Camp Lejeune Justice Act of 2022, Pub. L. No. 117-168, § 804, 136 Stat. 1759, 1802-04 (codified at 28 U.S.C. § 2671 note).

[2] In this action, Plaintiff seeks to certify three classes and one sub-class : (1) "Converge Robocall Class" with a "DeMayo Robocall Sub-Class;" (2) "National Do Not Call Registry Class;" and (3) "Internal Do Not Call Class." *See* Doc. No. 47 at ¶ 103 ("Amended Complaint"). However, for purposes of this Motion, the Court will refer only to Mr. Newman as Plaintiff.

calls. That company later filed for bankruptcy and was purchased by non-party Converge Direct, LLC ("Old Converge"). Afterward, DeMayo contracted with Old Converge and, throughout the beginning of the campaign, paid Old Converge more than $4 million. (Doc. No. 63 at 1). In return, Old Converge promised to indemnify DeMayo for claims tied to Old Converge's acts or its subcontractors' acts during the ad campaign. *Id.* Old Converge itself then filed for bankruptcy and was purchased "free and clear" by Defendant New Converge, a New York-based LLC. (Doc. No. 51 at ¶ 10).

### B. Pre-Bankruptcy Factual Allegations

Several years before 2022, Plaintiff placed his personal cell phone number on the National Do Not Call Registry. (Doc. No. 47 at ¶ 33). Beginning in November 2022, Plaintiff received numerous robocalls advertising DeMayo's legal services to bring claims related to a mass tort that occurred at Marine Base Camp Lejeune. *Id.* ¶ 34. Plaintiff notified DeMayo about the unwanted phone calls, and, in May 2023, he escalated the issue by filing a complaint against DeMayo with the Better Business Bureau ("BBB"). *Id.* ¶¶ 45, 50. In response to this BBB complaint, Old Converge retained counsel and coordinated with DeMayo to send Plaintiff a joint response and open settlement discussions. (Doc. No. 64 at 3).

### C. Bankruptcy Court Proceedings

On December 7, 2023, approximately seven months into settlement discussions, Old Converge filed for Chapter 11 bankruptcy in the Southern District of New York Bankruptcy Court (the "Bankruptcy Court"), in a case now captioned as *In re Troika Media Group, Inc.*, No. 23-11969 (DSJ) (S.D.N.Y.) (the "Bankruptcy Case").[3] (Doc. No. 64 at 3). Old Converge did not list

[3] Troika Media Group, Inc. acquired Old Converge in 2022. (Doc. No. 47 ¶ 63). The Bankruptcy Case included a total of thirteen entities.

Plaintiff as a known creditor nor mail him notice of the bankruptcy filing, including the claims bar date. *Id.* On February 8, 2024, the Bankruptcy Court entered an order approving the sale of substantially all assets of Old Converge to Defendant New Converge (the "Sale Order"). *Id.*; *see In Re Troika Media Group, Inc.*, Doc. No. 177 (S.D.N.Y Feb. 8, 2024). This purchase was "free and clear" of all claims and encumbrances. *Id.* at 4. The Sale Order states that New Converge is not "a mere continuation" of Old Converge and "there is no continuity of enterprise" between them. *Id.* Lastly, the Sale Order states that the Bankruptcy Court retains "exclusive jurisdiction" over claims related to the bankruptcy proceeding. *Id.*

**D. Post-Bankruptcy Factual Allegations**

Months later, Plaintiff sought to resume settlement negotiations with Old Converge by contacting its counsel. (Doc. No. 63 at 2). That counsel informed New Converge about Plaintiff's call and was subsequently retained by New Converge to resume negotiations with Plaintiff. *Id.* DeMayo alleges that from June 2024 through April 2025, New Converge and DeMayo coordinated their plan for the settlement negotiations and acted pursuant to their plan. *Id.* Moreover, DeMayo contends that it reasonably relied on New Converge's promises and conduct, and it understood their agreement to effectively continue the same arrangement that DeMayo had with Old Converge, specifically to negotiate the settlement and indemnify DeMayo. *Id.* at 2-3. Specifically, DeMayo alleges that New Converge: (1) retained counsel to negotiate Plaintiff's claims; (2) hired separate trial counsel for DeMayo; (3) directed that counsel appear on behalf of DeMayo, move to dismiss, and file a reply brief; (4) sent a proposed indemnity agreement that expressly stated that New Converge "stepped into Lacuna's rights and obligations"; (5) sought and received privileged information from DeMayo; and (6) waited more than ten months before claiming that it did not owe DeMayo a duty to defend or indemnify. *Id.* at 13.

## III. DISCUSSION

### A. Plaintiff and DeMayo's Procedural Argument

As an initial matter, Plaintiff and DeMayo assert that there are several procedural defects in New Converge's Motion that justify its denial. (Doc. No. 63 at 12; Doc. No. 64 at 5). Specifically, they first argue that New Converge only filed a "speaking motion" in violation of their consent briefing schedule, the Local Rules, and Magistrate Judge Keesler's text order admonishing the Parties to file substantive memoranda with dispositive motions, lest the court not consider the motion. *Id.* New Converge defends its speaking motion format and reliance on email correspondence as "cost-saving measures" and relies on the Court's "independent obligation" to determine jurisdiction. (Doc. No. 65 at 8). New Converge asks the Court to "spare a small post-bankruptcy entity as much in unnecessary legal costs as possible." *Id.*

New Converge may not decide for itself what is truly "necessary" under the Rules, and the Court cautions New Converge against repeating such conduct. The Local Rules clearly establish a requirement for a separate brief to be filed contemporaneously with a motion to dismiss. *See* LCvR 7.1(c)(1). Moreover, Magistrate Judge Keesler expressly ordered counsel to file separate supporting briefs with substantive motions. (Docket Text-Only Order, issued May 8, 2026) (citing Local Civil Rule 7.1(c)(1) and ordering parties "seeking a decision on any preserved motion must file a separate motion and supporting brief"). Still, preferring to address the merits of the Motion rather than the procedural defects, the Court will not deny the Motion on this ground.

### B. Jurisdiction

New Converge moves to dismiss for lack of subject matter jurisdiction, arguing that the Court lacks jurisdiction because the Bankruptcy Court proclaimed it had exclusive jurisdiction. (Doc. No. 61 at 3; Doc. No. 65 at 3). The Sale Order states, in relevant part, that the Bankruptcy

Court retains "exclusive jurisdiction to, among other things, interpret, implement and enforce the terms and provisions of the [Sale Order]." (Doc. No. 61 at 3).

In response, Plaintiff argues that his claim rests on "a straightforward federal question," which supports subject matter jurisdiction. (Doc. No. 64 at 5) (invoking 28 U.S.C. § 1331 and 47 U.S.C. § 227). DeMayo argues that its crossclaim falls squarely within the Court's supplemental jurisdiction. (Doc. No. 63 at 12) (invoking 28 U.S.C. § 1367). Yet, neither Plaintiff nor DeMayo effectively addresses what effect, if any, the Sale Order has on this Court's jurisdiction.

The Court finds it has subject matter jurisdiction over Plaintiff's claim and supplemental jurisdiction over DeMayo's crossclaim (but parts of this action still should ultimately be transferred to the Bankruptcy Court for the reasons discussed below). Claims "arising under" the Constitution or laws of the United States support federal question jurisdiction. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) (citing *Bell v. Hood*, 327 U.S. 678, 681-85 (1946)). Only a non-colorable claim, i.e., one that is "immaterial and made solely for the purpose of obtaining jurisdiction" or one that is "wholly insubstantial and frivolous" shall be dismissed for want of subject-matter jurisdiction. *Id.* at 513, n.10 (quoting *Bell*, 327 U.S. at 682-83, 666). Here, Plaintiff's non-frivolous claim "arises under" the laws of the United States because he expressly invokes the TCPA and alleges facts that plausibly allege violations of the statute, which establishes federal question subject-matter jurisdiction.[4] Further, the Court has supplemental jurisdiction over DeMayo's crossclaim because it arises from the same case or controversy. *See* 28 U.S.C. § 1367(a).

The Bankruptcy Court's Sale Order does not alter this jurisdictional analysis. New Converge conflates jurisdictional issues with meritorious defenses by arguing Plaintiff's claims

[4] New Converge admits the Court has specific personal jurisdiction. (Doc. No. 51 at ¶ 13).

are frivolous and barred. *See Arbaugh*, 546 U.S. at 511 (explaining the oft-conflated differences between jurisdictional arguments and merits-based defenses in the Title VII context). Whether Plaintiff ultimately receives the relief he seeks is yet to be determined, but that decision is downstream of the threshold jurisdictional issue. In other words, the Court does not submerge itself in the merits before anchoring its jurisdiction over the case. Moreover, as a corollary to the well-established principle that federal courts are courts of limited jurisdiction, federal courts derive their jurisdiction through federal statutes—not court orders. *See Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 837 (4th Cir. 2007) ("[N]either the parties nor the bankruptcy court can create § 1334 jurisdiction by simply inserting a retention of jurisdiction provision in a plan of reorganization . . .."); *see generally In re Haven Eldercare, LLC*, 503 F.App'x 13, 15 (2d Cir. 2012) (summary order) (rejecting sale order language asserting exclusive jurisdiction as "without merit" because § 1334(b) provides bankruptcy courts only with "original but not exclusive jurisdiction" over claims related to bankruptcy proceedings). So, New Converge overstates the significance of the Sale Order's "exclusive jurisdiction" because the plain text of 28 U.S.C. § 1334(b) only provides district courts and bankruptcy courts alike non-exclusive jurisdiction. "Simply put, the Debtor cannot 'write its own jurisdictional ticket.'" *Valley Historic Ltd. P'ship*, 486 F.3d at 837 (quoting *New Horizon of NY LLC v. Jacobs*, 231 F.3d 143, 155 (4th Cir. 2000)

In sum, the Court finds that it has subject-matter jurisdiction over the case and will deny New Converge's Motion to Dismiss.[5]

[5] New Converge also moves to dismiss under Rule 12(b)(4), but New Converge accepted service of process, thereby waiving any objection to service. (Doc. No. 49). Moreover, New Converge answered Plaintiff's Amended Complaint and did not raise this issue. (Doc. No. 51). Similarly, New Converge admitted that "venue is proper in this District," (Doc. No. 51 at 4, ¶ 14), so its venue arguments must be rejected and its Rule 12(b)(4) Motion denied.

### C. Transfer

In the alternative, New Converge moves the Court to transfer the case to the Southern District of New York Bankruptcy Court. (Doc. No. 61 at 3). Courts may transfer a case pursuant to limited statutory authority, namely §§ 1404(a) or 1406(a). Which statute applies will depend on whether venue in the transferee court is proper. Pursuant to § 1406(a), the "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Pursuant to § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

New Converge alternates its argument for which authority applies. First, it "originally suggested" to transfer "perhaps pursuant to 28 U.S.C. §§ 1404, 1406 and/or 157" and later suggested that "§ 1631 allows the Court to transfer" in the interests of justice. (Doc. No. 65 at 10). And New Converge undercuts any "interests of justice" argument under § 1404 by its contention that Plaintiff's claims are "barred" and "frivolous." *Id.* In turn, Plaintiff contends that transferring the case is inappropriate and unsupported by the record because New Converge "offers no affidavit, no witness list, and no explanation" for why litigating his claims in New York is supported by the convenience of the parties and witnesses. (Doc. No. 64 at 12). DeMayo argues that transferring the case would not serve judicial economy because splitting the case would "invite delay, duplication, and inconsistent factual findings." (Doc. No. 63 at 21).

The Court agrees with each Party in part. First, the Court will not adopt New Converge's theory that transferring the case pursuant to § 1406 is appropriate because that statute only applies where venue is improper. (And New Converge admits that venue is proper). (Doc. No. 51 ¶ 14).

New Converge's theory of applying § 157 shares a similar fate because that section applies to a district court's transferring a case "to the bankruptcy judges *for the district*," i.e., within the same district in which the district court sits. § 157(a) (emphasis added).

Turning to § 1404(a), the Court acknowledges that district courts throughout the Fourth Circuit diverge as to which statute applies when transferring a case that is "related to" a bankruptcy case. *See generally Schniper v. ServisFirst Bancshares, Inc.*, No. 1:21-CV-171-MOC-DCK, 2022 WL 374838, at *4 (W.D.N.C. Feb. 7, 2022) (discussing whether § 1404 or § 1412 is the proper vehicle to transfer a case "related to" a bankruptcy proceeding and explaining how courts throughout the Fourth Circuit have applied both). Section 1412 provides that a "district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. The Court need not decide which statutory vehicle should apply for three reasons. First, the Fourth Circuit has not resolved this issue. *See Schniper*, 2022 WL 374838, at *6. Second, New Converge did not include § 1412 in its bevy of transfer authority options, so the distinction is not briefed before the Court. Third, and most importantly, the outcome would likely be the same under either vehicle because the two frameworks merge on a single issue that is germane to the Motion: jurisdiction.

These transfer statutes conceptually merge because the propriety of the transfer rests on whether the case being transferred is "related to" a bankruptcy proceeding. The clear text of § 1404(a) requires that the transferor court may only transfer the case to a district court where the case "might have been brought." § 1404(a). This means the transferee court must have a basis for jurisdiction. *See Schniper*, 2022 WL 374838, at *5. That basis is found in 28 U.S.C. § 1334(b), which provides that bankruptcy courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in *or related to* cases under title 11." *Id.* (emphasis

added). Similarly, a transfer pursuant to § 1412 requires that the case is "related to" a bankruptcy case. *See e.g.*, *Schniper*, 2022 WL 374838, at *5. So, courts proceeding under either statute will arrive at the same place: deciding whether the case is "related to" a bankruptcy case or proceeding.

An action is "related to a case in bankruptcy if the outcome in the civil case '*could conceivably have any effect on the estate being administered in bankruptcy* . . . if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.'" *New Horizon of NY LLC*, 231 F.3d at 151 (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, n.6 (1995)); *see also Spartan Mills v. Bank of America Ill.*, 112 F.3d 1251, 1255-56 (4th Cir. 1997), *cert. denied*, 522 U.S. 969 (1997) (applying the same test "derivatively" for bankruptcy courts).[6]

If a bankruptcy case has already issued a confirmation order, the "related to" inquiry narrows and further requires that the case have a "close nexus" to the bankruptcy proceeding to be transferred. *See Daniels for Est. of Daniels v. FCA US, LLC*, No. 4:17-cv-02300-AMQ, 2018 WL 3587004, at *4 (D.S.C. July 26, 2018) (citing *Valley Historic Ltd. Partnership*, 486 F.3d at 836-37) (noting the "close nexus" requirement in the post-confirmation context is a logical corollary of "related to" jurisdiction).

[6] However, after these transfer authorities merge on the "related to" inquiry, the § 1412 transfer analysis diverges somewhat from § 1404(a). Rather than assessing "the convenience of parties and witnesses, in the interest of justice," courts transferring a case pursuant to § 1412 assess different factors: "(a) the economic administration of the bankruptcy estate; (b) the presumption in favor of trying cases "related to" a bankruptcy case in the court in which the bankruptcy is pending; (c) judicial efficiency; (d) ability to receive a fair trial; (e) the state's interests in having local controversies decided within its borders; (f) enforceability of any judgment rendered; and (g) the plaintiff's original choice of forum." *Schniper*, 2022 WL 374838, at *5 (quoting *Yolo Cap., Inc. v. Normand*, No. 1:17-CV-00180-MR-DLH, 2018 WL 576316, at *2 (W.D.N.C. Jan. 26, 2018)).

Here, the Court arrives at another possible procedural shortfall by New Converge. Twice, New Converge asserts that "the bankruptcy is still pending." (Doc. No. 65 at 2; Doc. No. 61 at 3). And as authority, New Converge directs the Court to *In re: Troika Media Group, Inc.*, Case No. 23-11969 (S.D.N.Y.). But despite discussing the Sale Order in detail, New Converge does not explain the significance or effect of the Confirmation Order. *See In re: Troika Media Group, Inc.*, Doc No. 358 (ordered June 14, 2024). Specifically, New Converge does not explain how the bankruptcy is still pending when the Bankruptcy Court's Confirmation Order only left open the matter concerning Troika Media Group, Inc. and closed cases with debtors Converge Direct, LLC, (No. 23-11957), Converge Direct Interactive, LLC, (No. 23-11958), and Lacuna Ventures, LLC (No. 23-11960). *See id.* That is, New Converge does not explain how a pending bankruptcy action involving Troika Media Group, Inc., a purported parent company of Old Converge, affects the duties and obligations of New Converge after the "free and clear" Sale Order and with no continuity with Old Converge. Nonetheless, assuming the bankruptcy case is post-confirmation, the narrower "close nexus" test is still likely met because Plaintiff's claim requires an interpretation and execution of the Sale Order. *See e.g.*, *Daniels for Est. of Daniels*, 2018 WL 3587004, at *5 (finding interpretation of a Sale Order satisfies the "close nexus" test) (collecting cases).

In sum, the Court finds that Plaintiff's claim against New Converge is "related to" and bears a "close nexus" with the Bankruptcy Case. The Bankruptcy Court's Sale Order describes a process that purportedly satisfies statutory and constitutional notice requirements to known and unknown creditors. *See In Re Troika Media Group, Inc.*, Doc. No. 177. And the Bankruptcy Court is in the best position to determine whether Plaintiff was a known or unknown creditor and to what degree due process was afforded to him. *See In re Merry-Go-Round Enterprises, Inc.*, 400 F.3d

219, 227 (4th Cir. 2005) (quoting *Colonial Auto Ctr. V. Tomlin (In re Tomlin)*, 105 F.3d 933, 941 (4th Cir. 1996) ("[A] bankruptcy court is in the 'best position to interpret its own orders.'").

However, the Court will not transfer the entire case. DeMayo's crossclaim alleges exclusively post-sale conduct by New Converge. *See supra* Part II.D. That is, none of the alleged conduct is conceivably attributable to Old Converge. Moreover, DeMayo's claims sound in state contract law, and the alleged conduct establishing and breaching the contract began in June 2024—after the Sale Order. It would not serve the interests of the Parties nor the ends of justice to burden the Bankruptcy Court or the Southern District of New York with DeMayo's crossclaims against a party that was not before the Bankruptcy Court, particularly when DeMayo chose to bring them here. More directly, DeMayo's crossclaims are not "related to" nor bear a "close nexus" to the bankruptcy case, so the Court will not transfer it.

* * *

So far, the Court has discussed Plaintiff's claims, DeMayo's crossclaims, and Defendant's Motion as they were submitted by the Parties. To fully set the course forward, however, the Court must consider—on its own motion—whether to sever and stay certain claims for the overall management of the case in the interest of judicial economy, the Parties' interests, and the interest of justice broadly.

**A. Sever and Stay**

Courts have broad inherent authority to manage their dockets. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). Pursuant to this inherent authority and Rule 21 of the Federal Rules of Civil Procedure, courts are empowered to order severance and transfer part of the

action and issue a stay *sua sponte* as to the remainder. *See e.g.*, *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 631 (E.D. Va. 2003) (citing Fed. R. Civ. P. 21 and *Landis*, 299 U.S. at 25). Rule 21 provides that courts may "on its own [motion] . . . on just terms . . . sever any claim against a party." Fed. R. Civ. P. 21; *see e.g.*, *Parker Excavating, Inc. v. JOMCO Contracting, LLC*, No. 1:19-CV-00062-MR-WCM, 2020 WL 261758, at *2 (W.D.N.C. Jan. 17, 2020) (granting in part and denying in part a motion to dismiss and staying claims against the other defendant).

That said, District courts must exercise "judgment 'to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket.'" *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 375 (4th Cir. 2013) (quoting *United Staes v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977)). These factors include: "(1) 'the interests of judicial economy'; (2) the 'hardship and equity to the moving party' in the absence of a stay; and (3) the 'potential prejudice to the non-moving party' in the event of a stay." *Gunpowder Cap. Mgmt., LLC v. Darpel*, No. 1:24-CV-914, 2025 WL 2697268, at *3 (M.D.N.C. Sept. 22, 2025).

After balancing the stay factors and exercising its judgment, the Court finds that severing the case to transfer part of it and stay the other part is warranted. To be sure, judicial economy is not immediately benefited by a stay because the case is paused. But it can be wise to measure twice and cut once. A stay pending the Bankruptcy Court's interpretation and enforcement of the Sale Order will provide clarity regarding a central issue to Plaintiff's Complaint and illuminate the path forward on remaining issues. The potential hardship and equity to the Parties also weighs in favor of staying the case. Plaintiff's argument that he was not afforded constitutionally adequate notice of the bankruptcy proceeding is persuasive enough to allow him to be heard in that court to potentially prevent an injustice from occurring. And it would sew chaos or confusion into the Court's docket if the Court proceeded with either Plaintiff's claims against DeMayo or DeMayo's

crossclaims against New Converge in the interim. Even though DeMayo's crossclaim allegations center on post-bankruptcy conduct, the predicate acts underlying the reason for those acts have their roots in pre-bankruptcy conduct. Moreover, if Plaintiff prevails on his claims against either Defendant, the determination as to who is responsible for damages will require resolution of DeMayo's indemnification crossclaim. A stay mitigates against all these concerns.

Similarly, staying the case does not present serious risk of prejudice. Unlike other stay contexts, where the primary concern is that delaying resolution of a plaintiff's claims might prejudice the plaintiff while he waits for different parties to resolve other issues, here Plaintiff himself will be responsible for pursuing a decision from the Bankruptcy Court. So, the proper incentives to timely proceed are aligned and mitigate any prejudice caused by an unnecessary delay. While there is incidental delay affecting DeMayo's crossclaims against New Converge, this is the risk DeMayo took when it brought a permissive crossclaim, rather than independently pursuing an individual claim against New Converge. Additionally, a delay allows DeMayo more time to prepare for defending against Plaintiff. And DeMayo may prepare differently armed with the knowledge that Plaintiff can only bring a claim against DeMayo, as opposed to maintaining claims against all Defendants.

Accordingly, the Court will sever the various claims and proceed as follows: (1) Plaintiff's claim against New Converge will be transferred to the Southern District of New York; and (2) Plaintiff's claim against DeMayo and DeMayo's crossclaim against New Converge remain with this Court and will be stayed pending the outcome of Plaintiff's claim in the Bankruptcy Court.

## II. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant New Converge's Motion to Dismiss or, in the Alternative Transfer to Bankruptcy Court (Doc. No. 61) is **GRANTED in part and DENIED in part**;
2. The Clerk is directed to **SEVER** Plaintiff's claim against Defendant New Converge and **TRANSFER** it to the Southern District of New York;
3. The Clerk is directed to **STAY** this matter in accordance with this Order; and
4. The Parties shall file a status report with the Court every ninety (90) days until the Bankruptcy Court or District Court in the Southern District of New York issues an order pertaining to Plaintiff's claim against Old Converge or New Converge.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: October 26, 2026

Kenneth D. Bell
United States District Judge